IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| "JANE DOE", ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br><br> and <br><br> "JANE ROE," ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br><br> and all others similarly situated, <br><br>         *Plaintiffs,* <br><br>       v. <br><br> **HOLLIDAYSBURG AREA SCHOOL DISTRICT,** <br> 405 Clark Street <br> Hollidaysburg, PA 16648; <br><br> and <br><br> **CURTIS WHITESEL, IN HIS INDIVIDUAL CAPACITY AND IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT OF HOLLIDAYSBURG AREA SCHOOL DISTRICT,** <br> 405 Clark Street <br> Hollidaysburg, PA 16648, <br><br> and <br><br> **DALE McCALL, IN HIS INDIVIDUAL CAPACITY AND IN HIS OFFICIAL CAPACITY AS PRINCIPAL OF HOLLIDAYSBURG AREA JUNIOR HIGH SCHOOL,** <br> 405 Clark Street <br> Hollidaysburg, PA 16648 <br><br> and <br><br> **BENJAMIN CALDWELL, IN HIS INDIVIDUAL CAPACITY AND IN HIS OFFICIAL CAPACITY AS TITLE IX COORDINATOR OF HOLLIDAYSBURG AREA SCHOOL DISTRICT,** <br> 405 Clark Street <br> Hollidaysburg, PA 16648 <br><br>         *Defendants.* | Case No. _____ <br><br><br> **COMPLAINT – CLASS ACTION** <br><br> **JURY TRIAL DEMANDED (8)** |

## COMPLAINT

Plaintiffs, who seek to proceed in the instant action anonymously, as "Jane Doe" and "Jane Roe," and all others similarly situated, hereby submit and file the following Complaint, and proposed class action, against Defendants, Hollidaysburg Area School District, Curtis Whitesel, in his individual capacity and official capacity as Superintendent of Hollidaysburg Area School District, Dale McCall, in his individual capacity and official capacity as Principal of Hollidaysburg Area Junior High School, and Benjamin Caldwell, in his individual capacity and official capacity as Title IX Coordinator of Hollidaysburg Area School District, and in support thereof, Plaintiffs aver as follows:

## I.    INTRODUCTION:

1.    This is a proposed class action against Defendant, Hollidaysburg Area School District, whose School Board, or School Board of Directors, on account of alleged hatred toward members of the LGBTQ+ community, including LGBTQ+ teachers and students in the District, on October 15, 2025, voted 8-0 to formally pass a blatantly homophobic, District-wide policy that explicitly states, in pertinent part, for purposes of this action: "Décor related to … sexual orientation or gender identity, in the classroom, and in the school buildings, and/or at school activities is prohibited," and which expressly prohibits "any flag, banner, poster, sign, sticker, pin, button, insignia, paraphernalia, photograph, or other similar material that advocates concerning … sexual orientation or gender identity." *See* the policy of the Hollidaysburg Area School District, Policy 321.1, a true and correct copy of which is attached hereto as Exhibit "A," at pp. 1-2. One (1) School Board member was absent for the vote on Policy 321.1 and three (3) additional Board members have since been sworn in to the School Board. The aforementioned policy, Policy 321.1, is the functional equivalent of what is referred to as a "Don't Say Gay" prohibition, although the

2

Commonwealth of Pennsylvania is not a "Don't Say Gay" state. To the contrary, the Pennsylvania Human Relations Commission ("PHRC") passed guidance in August of 2018, which was passed even before *Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020) was decided, and which is currently still in effect, that interpreted the Pennsylvania Human Relations Act ("PHRA") as explicitly prohibiting discrimination based on sexual orientation and gender identity as a form of discrimination on the basis of sex, including in employment, housing, public accommodations, and including in educational institutions like Defendant, Hollidaysburg Area School District. *See* PHRC Guidance dated August 2, 2018.

2. It should be pointed out that people who are LGBTQ+, and especially young people who are LGBTQ+ or students who are LGBTQ+, attempt suicide at alarming rates compared to the rest of the population. *See* 2023 Youth Risk Behavior Survey, Centers for Disease Control and Prevention ("CDC"); *see also* 2024 U.S. National Survey on the Mental Health of LGBTQ+ Young People, The Trevor Project. The increased risk is believed to be due to the blatant discrimination and bigotry that members of the LGBTQ+ community routinely face of which the aforementioned policy is a direct example. The District's policy endangers the wellbeing of members of the LGBTQ+ community including LGBTQ+ students within the District. The intent behind the policy is alleged to be a bare desire to harm LGBTQ+ people, to purge and censor speech about sexual orientation or gender identity within the School District, while similar speech is not prohibited, or, in practice, not policed within the District. The District's Policy, Policy 321.1, is averred to be overtly and facially discriminatory against Plaintiffs and against people who are LGBTQ+, and/or unconstitutional as applied to Plaintiffs.

3. Pursuant to the School Board's discriminatory Policy 321.1, Defendants, Hollidaysburg Area School District, Whitesel, and McCall, at all times relevant hereto, required

Plaintiffs, "Jane Doe" and "Jane Roe," who are longtime teachers employed by Defendant, Hollidaysburg Area School District, to remove Pride flags from their classrooms, including requiring Ms. Doe to remove a Pride flag from her filing cabinet as well as from her desk; requiring Ms. Roe to remove the Pride flag from her desk as well as the Bi Pride flag from Ms. Roe's desk once the Bi Pride flag was inspected and it was subsequently discovered what the flag represented; requiring Ms. Doe to remove a non-discrimination statement from her door simply because it included "gender identity" as one of the protected classes; requiring both Plaintiffs to remove rainbow-colored signs, stickers, and/or decals, other messages of acceptance for members of the LGBTQ+ community, and/or any item remotely resembling support for members of the LGBTQ+ community. Defendants, Hollidaysburg Area School District, Whitesel, and McCall further required Ms. Doe, who is a Math teacher, to remove a mathematical pi symbol, $\pi$, from outside of her classroom simply because it was rainbow-colored. Defendant, Hollidaysburg Area School District, also bans books throughout the School District with LGBTQ+ characters, content, and/or themes, all as part of Defendant, Hollidaysburg Area School District's, efforts to purge the schools throughout the District of any and all references to sexual orientation or gender identity. However, Defendants, Hollidaysburg Area School District, Whitesel, and McCall did not and do not police or censor similar speech in a similar manner, as identified by Plaintiffs more fully herein.

4.      The instant litigation is brought for the primary objective of requesting equitable or injunctive relief from this Honorable Court requiring that the aforementioned policy of the District, Policy 321.1, and any future iteration of the policy, prohibiting displays with rainbows, displays relating to sexual orientation or gender identity, or prohibiting displays demonstrating support for members of the LGBTQ+ community, be immediately and permanently enjoined throughout the School District. Plaintiffs further request that all members of the School Board or the School

4

Board of Directors of Defendant, Hollidaysburg Area School District, as well as all employees of Defendant, Hollidaysburg Area School District, be required to undergo LGBTQ+ sensitivity training. Plaintiffs also request damages, including compensatory damages for pain and suffering, humiliation and embarrassment, emotional distress, punitive damages, and attorneys' fees and costs, as allowed by applicable law, to the extent set forth below.

## II. THE PARTIES:

5. The first Plaintiff, who seeks to proceed in the instant action anonymously as "Jane Doe," is an adult individual who, at all times relevant hereto, is a citizen and resident of Blair County, Pennsylvania, in the Commonwealth of Pennsylvania, residing at ███████████████, ███████████████ Plaintiff, Jane Doe, has filed a Motion to Proceed Anonymously and Brief in Support thereof on this same date seeking leave of Court to proceed anonymously in the instant action.

6. The second Plaintiff, who seeks to proceed in the instant action anonymously as "Jane Roe," is an adult individual who, at all times relevant hereto, is a citizen and resident of Blair County, Pennsylvania, in the Commonwealth of Pennsylvania, residing at ███████████████ ███████████ Plaintiff, Jane Roe, has filed a Motion to Proceed Anonymously and Brief in Support thereof on this same date seeking leave of Court to proceed anonymously in the instant action.

7. Undersigned Counsel has also filed, on the same date as the filing of the instant Complaint, Undersigned Counsel's Motion for *Pro Hac Vice* Admission for Plaintiffs, Jane Doe and Jane Roe, the Affidavit of Undersigned Counsel in Support of Undersigned Counsel's Motion for *Pro Hac Vice* Admission, and a Certificate of Good Standing from the Supreme Court of Pennsylvania, consistent with LCvR 83.2, LCvR 83.3, and this Court's Standing Order Regarding

*Pro Hac Vice* Admissions dated May 31, 2006 (Misc. No. 06-151).

8.  Defendant, Hollidaysburg Area School District (hereinafter referred to as "Hollidaysburg Area School District," "the School District," or "the District") is a school district with a principal office and/or a principal place of business located at 405 Clark Street, Hollidaysburg, PA 16648, and regularly conducts and transacts business in the Western District of Pennsylvania.

9.  Defendant, Curtis Whitesel, is the Superintendent of Hollidayburg Area School District.  Defendant, Curtis Whitesel, is believed and averred to be a citizen and resident of the Commonwealth of Pennsylvania, at all times relevant hereto.  Defendant, Curtis Whitesel's, place of employment is located at 405 Clark Street, Hollidaysburg, PA 16648.  Defendant, Curtis Whitesel, is being sued in his individual capacity, and in his official capacity as Superintendent of Hollidaysburg Area School District.  At all times relevant hereto, Defendant, Curtis Whitesel, acted within the course and scope of his employment and/or agency relationship with Defendant, Hollidaysburg Area School District.

10. Defendant, Dale McCall, is the Principal of Hollidaysburg Area Junior High School.  Defendant, Dale McCall, is believed and averred to be a citizen and resident of the Commonwealth of Pennsylvania, at all times relevant hereto.  Defendant, Dale McCall's, place of employment is located at 405 Clark Street, Hollidaysburg, PA 16648.  Defendant, Dale McCall, is being sued in his individual capacity, and in his official capacity as Principal of Hollidaysburg Area Junior High School.  At all times relevant hereto, Defendant, Dale McCall, acted within the course and scope of his employment and/or agency relationship with Defendant, Hollidaysburg Area School District.

11. Defendant, Benjamin Caldwell, is the Title IX Coordinator for Hollidaysburg Area

6

School District. Defendant, Benjamin Caldwell, is believed and averred to be a citizen and resident of the Commonwealth of Pennsylvania, at all times relevant hereto. Defendant, Benjamin Caldwell's, place of employment is located at 405 Clark Street, Hollidaysburg, PA 16648. Defendant, Benjamin Caldwell, is being sued in his individual capacity, and in his official capacity as Title IX Coordinator of Hollidaysburg Area School District. At all times relevant hereto, Defendant, Benjamin Caldwell, acted within the course and scope of his employment and/or agency relationship with Defendant, Hollidaysburg Area School District.

### III.    JURISDICTION & VENUE:

12.    Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject-matter jurisdiction over Plaintiffs' claims as the claims present a Federal question.

13.    This Court has personal jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in *International Shoe Company v. State of Washington*, 326 U.S. 310 (1945), and its progeny.

14.    Under 28 U.S.C. § 1391(b)(1), venue is proper in this judicial district because Defendant, Hollidaysburg Area School District, is deemed to reside in this judicial district. *See* 28 U.S.C. § 1391(b)(1).

15.    Defendant, Hollidaysburg Area School District, is deemed to reside in this judicial district pursuant to 28 U.S.C. § 1391(c)(2) which provides, in pertinent part:

> (c)    Residency.—For all venue purposes—
> …
> (2)    an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such

7

defendant is subject to the court's personal jurisdiction with respect to the civil action in question … .

28 U.S.C. § 1391(c)(2).

16.    It is believed and therefore averred that Defendants, Curtis Whitesel, Dale McCall, and Benjamin Caldwell are residents of this judicial district.

17.    Under 28 U.S.C. § 1391(b)(2), venue is further proper in this judicial district because "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district.  28 U.S.C. § 1391(b)(2).

## IV.    CLAIMS FOR RELIEF:

### COUNT I:
### VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 ("TITLE IX"), 20 U.S.C. § 1681, *et seq.*
### (PLAINTIFF, JANE DOE v. DEFENDANT, HOLLIDAYSBURG AREA SCHOOL DISTRICT)

18.    Plaintiff, Jane Doe, hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

19.    It is believed, and therefore, averred that, at all times relevant hereto, Defendant, Hollidaysburg Area School District, received Federal financial assistance for its educational programs and activities, and, it is believed and, therefore, averred, that Defendant, Hollidaysburg Area School District, currently receives Federal financial assistance for its educational programs and activities.  Defendant, Hollidaysburg Area School District, is therefore subject to Title IX of the Education Amendments of 1972 ("Title IX"), codified at 20 U.S.C. § 1681, *et seq.*, which provides, in pertinent part, that:  "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance … ." 20 U.S.C. § 1681(a), *et seq.*

8

20.     Plaintiff, Jane Doe, is LGBTQ+. Plaintiff, Ms. Doe, is a lesbian woman. Plaintiff, Ms. Doe, has been a teacher employed by Defendant, Hollidaysburg Area School District, for approximately fifteen (15), going on sixteen (16), years.

21.     The School Board of Defendant, Hollidaysburg Area School District, on account of hatred toward members of the LGBTQ+ community, including its own LGBTQ+ teachers like Plaintiffs, and its own LGBTQ+ students, on October 15, 2025, voted 8-0 to formally pass a blatantly homophobic, District-wide policy that explicitly states, in pertinent part, for purposes of this action: "Décor related to … sexual orientation or gender identity, in the classroom, and in the school buildings, and/or at school activities is prohibited," and expressly prohibits "any flag, banner, poster, sign, sticker, pin, button, insignia, paraphernalia, photograph, or other similar material that advocates concerning … sexual orientation or gender identity." *See* the Policy of Defendant, Hollidaysburg Area School District, Policy 321.1, a true and correct copy of which is attached hereto as Exhibit "A," at pp. 1-2.

22.     Although the Policy with the new prohibition containing the language, " … sexual orientation or gender identity," was passed formally by the School Board on October 15, 2025, the Policy was previously discussed in September 2025 during School Board meetings by the District's School Board members that the Policy was going to be put up for a vote. The Policy began to be enforced against Plaintiffs even before its formal adoption on October 15, 2025, in September 2025, by Defendant, Hollidaysburg Area School District, specifically by Defendant, Mr. Curtis Whitesel, and Defendant, Mr. Dale McCall. Plaintiff alleges that this is further evidence of the true intent behind the Policy, to discriminate based on sexual orientation or gender identity, even before the language of the policy applicable to "sexual orientation or gender identity" was even officially adopted.

23.    Defendants, at all times relevant hereto, required Ms. Doe to remove Pride flags, rainbow-colored signs, stickers, and/or decals, messages of acceptance for members of the LGBTQ+ community, and any item remotely resembling support for members of the LGBTQ+ community, from her classroom, all as part of Defendants' efforts to purge the schools throughout the District of any and all references to sexual orientation or gender identity.

24.    In or about September 16, 2025, Defendant, Mr. Dale McCall, in his capacity as the Principal of Hollidaysburg Area Junior High School, it is believed, at the direction of Defendant, Mr. Curtis Whitesel, in his capacity as the Superintendent of Hollidaysburg Area School District, required Ms. Doe to remove rainbow-colored signs, stickers, and/or decals from outside of her classroom in an effort to purge items from the school classrooms relating to sexual orientation or gender identity.  Defendants have prohibited the display of the items by Ms. Doe on the school grounds since that time.  At that time, Defendants required Plaintiff, Ms. Doe, to remove and have prohibited a sign with the phrase, "Diverse, Inclusive, Accepting, Welcome Safe Space For Everyone," from outside of Ms. Doe's classroom, because the phrase was written in rainbow colors and appeared alongside rainbow colors.  Defendants also, at that time, required Ms. Doe to remove and have prohibited a decal with the phrase, "You Are in the 100%, Be Kind, Be Inclusive," from outside of Ms. Doe's classroom, because the decal contained rainbow colors.

25.    In or about September 2025, Defendants also required Plaintiff, Ms. Doe, a math teacher, to remove and have prohibited the use of a mathematical pi symbol, $\pi$, from outside of Ms. Doe's classroom simply because the pi symbol was rainbow-colored.

26.    The aforementioned items were ultimately removed by Plaintiff, Ms. Doe, upon the implied threat of disciplinary action, up to and including termination, by Defendants, Hollidaysburg Area School District, Whitesel, and/or McCall.  The aforementioned items were

also removed upon the implied threat of the item being removed by Defendants, Hollidaysburg Area School District, Whitesel, and/or McCall.  Plaintiff, Ms. Doe, therefore complied by removing the aforementioned items.  Plaintiff, Ms. Doe, objected to their removal and took several photographs of some of the items before removal, some of which are contained below:

  

27.     In or about October 2025, Defendants, Hollidaysburg Area School District, Whitesel, and McCall required the removal of multiple Pride flags from being displayed outside of Ms. Doe's filing cabinet in Ms. Doe's classroom.  In or about November 2025, Defendants, Hollidaysburg Area School District, Whitesel, and McCall required the removal of a Pride flag from Ms. Doe's desk and have prohibited the display of the flag on Ms. Doe's desk since that time. Specifically, Mr. McCall communicated the requirement that the flag be removed from Ms. Doe's desk.

28.     On or about November 6, 2025, and November 19, 2025, Defendant, Curtis Whitesel, Superintendent of the School District, visited Hollidaysburg Junior High School, in person, in order to police the school buildings for purposes of purging material "… relating to

11

sexual orientation or gender identity" in violation of Policy 321.1. Defendant, Mr. Whitesel, the Superintendent of Hollidaysburg Area School District, policed Plaintiff, Ms. Doe's, classroom, and, it is believed and averred, routinely polices the classrooms and school buildings throughout the District, in order to purge references "... relating to sexual orientation or gender identity," or which in any way remotely resemble support for members of the LGBTQ+ community, in violation of Policy 321.1. Mr. Whitesel proceeded to identify for removal several items from Ms. Doe's classroom relating to sexual orientation or gender identity. Mr. Whitesel ordered Defendant, Dale McCall, Principal of Hollidaysburg Area Junior High School, to ensure Ms. Doe removed the items from her classroom.

29.    On or about October 31, 2025, Defendant, Hollidaysburg Area School District, held an official in-service training with Plaintiffs and with other teachers and administrators of the School District in attendance. The training was held at Hollidaysburg Area Senior High School and conducted by Superintendent Whitesel. At the in-service training, Superintendent Whitesel read the entire room the text of Policy 321.1. Plaintiffs were specifically instructed by Superintendent Whitesel during the training that, pursuant to Policy 321.1, the classrooms could not contain messages that had any reference to sexual orientation or gender identity, or words to that effect. Ms. Doe asked Superintendent Whitesel a question in front of the group about why she would have to remove such items from her classroom as a violation of the Policy, or words to that effect. Superintendent Whitesel responded to Ms. Doe in front of the group that it was "because rainbows have religious connotations," or words to that effect.

30.    On or about October 27, 2025, Mr. McCall removed a Pennsylvania Department of Education poster from Plaintiff, Ms. Doe's, classroom. Mr. McCall informed Ms. Doe about the removal of the poster on a date that Ms. Doe was off from work, and on that date did not give Ms.

12

Doe a chance to remove the item prior to Mr. McCall removing the item. Mr. McCall informed Ms. Doe that he was removing the poster "as it mentions gender identity," in other words, solely on the basis that the poster mentioned gender identity. *See* E-mail Correspondence from Principal, Dale McCall, to Plaintiff, Ms. Doe, dated October 27, 2025, a true and correct copy of which is attached hereto as Exhibit "B," redacted of Plaintiff's name consistent with Plaintiff's Motion to Proceed Anonymously; *see also* Pennsylvania Department of Education poster, a true and correct copy of which is attached hereto as Exhibit "C," with the prohibited language, "gender identity," highlighted by Undersigned Counsel in the version attached hereto for reference. The poster was actually created by the Pennsylvania Department of Education. Further, the poster was identified as material to be downloaded during an online in-service training required to be taken by Defendant, Hollidaysburg Area School District, for teachers employed by the District. "Gender identity" was simply being referenced on the poster as one of the protected classes of individuals for purposes of the District's non-discrimination statement. The non-discrimination statement is accurately stated on the poster as the District's non-discrimination policy prohibits discrimination on the basis of sex, which includes discrimination on the basis of transgender status, and the District's non-discrimination policy would otherwise be applicable to all students including transgender students. The portion of the poster that referenced "gender identity" was tiny compared to the rest of the poster. It is alleged Defendants, Hollidaysburg Area School District, Whitesel, and/or McCall singled out members of the LGBTQ+ community for unequal treatment.

31. On or about October 28, 2025, Plaintiff, Ms. Doe, asked Mr. Whitesel whether training was provided by the District on Title IX, and Mr. McCall responded by e-mail to Ms. Doe that the District had "abolished" Title IX training because Policy 321.1 was adopted. *See* E-mail Correspondence from Superintendent Whitesel to Plaintiff, Ms. Doe, dated October 28, 2025, a

13

true and correct copy of which is attached hereto as Exhibit "D." It is alleged Mr. McCall, Superintendent Whitesel, and the District have abolished training on Title IX within the District. Defendants' discriminatory acts committed against the LGBTQ+ community are so blatantly homophobic that Defendants would rather admit to "abolishing" training on sex discrimination entirely for all of their students rather than have to teach that individuals are protected from discrimination based on their sexual orientation or their gender identity as discrimination on the basis of sex pursuant to Title IX.

32.    In or about November 2025, Plaintiffs, including Ms. Doe, brought internal complaints to the Defendant, Hollidaysburg Area School District's, Human Resources ("HR") department about being discriminated against and being required to remove the aforementioned items. Specifically, Plaintiffs brought their complaints to Defendant, Mr. Benjamin Caldwell, before the filing of the instant litigation, in order to attempt to resolve the instant matter prior to filing the litigation. Mr. Caldwell works in the HR department, and is also the Title IX Coordinator for the School District. The School District, by and through Mr. Caldwell, provided the same response to both of Plaintiffs' complaints, determining that there was not a violation of Title VII of the Civil Rights Act of 1964, or of Title IX of the Education Amendments of 1972, in the case of either complaint. Mr. Caldwell's Determination was dated January 16, 2026. Although Defendants did not inform Plaintiffs about their right to appeal that decision, on or about February 3, 2026, Plaintiffs both appealed the Title IX determination by the District that was provided by Mr. Caldwell in accordance with the School District's policy requiring appeals to be submitted within fifteen (15) school days. *See* the School District's Discrimination Complaint Procedures, Policy 104, at p. 7, para. 1. In response to Plaintiffs' appeals, on February 27, 2026, Defendant,

14

Curtis Whitesel, notified Plaintiffs that the District was upholding the determination on Plaintiffs' complaints.

33.     Mr. Caldwell has sought to defend the District's hateful, heinous acts in response to both of Plaintiffs' internal complaints of discrimination by arguing in response to Plaintiffs' complaints that teachers who were LGBTQ+, and teachers who were not LGBTQ+, were being forced to remove LGBTQ+ content from their classrooms, therefore, there can allegedly be no discrimination, which is also denied by Plaintiffs due to the disparate treatment specifically alleged herein regarding religious, political, and sociopolitical symbols, displays, or activities that are permitted by the District.    However, first and foremost, the District's argument was already rejected by the Supreme Court of the United States in *Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020), which remains the law.  *See Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 665 (2020).  The Court held, "Trying another angle, the defendants before us suggest that an employer who discriminates [based on sexual orientation or gender identity] doesn't intentionally discriminate based on sex, as a disparate treatment claim requires.  But, as we've seen, an employer who discriminates [based on sexual orientation or gender identity] necessarily and intentionally applies sex-based rules.  An employer that announces it will not employ anyone," for example, who is gay or lesbian, "intends to penalize male employees for being attracted to men and female employees for being attracted to women." *Id.*  Plaintiffs contend that the Policy is discriminatory based on sexual orientation and gender identity, is inherently discriminatory, and treats similarly situated individuals differently on the basis of sexual orientation and gender identity.

34.     Second, Mr. Caldwell stated to Plaintiffs in response to their internal complaints under Title IX, that Title IX protected three categories:

> Discrimination under Title IX falls into one of three categories applicable to employees. The first is related to the exchange of unwelcome sexual conduct, or "quid pro quo" sexual

harassment, which is not alleged here. The second is conduct that is "severe, pervasive, and objectively offensive" such that it denies a person equal access to a district education program or activity. None of the allegations appear to rise to this level. Thirdly, a Title IX complaint may be brought in regards to sexual assault, dating violence, domestic violence, or stalking. None of these offenses are alleged.

*See* Letter Response of Mr. Caldwell to Plaintiff's Internal Title IX Complaint, at p. 1.

Plaintiffs contend that this is not accurate as, according to *Bostock, supra,* any adverse employment action being taken against an employee on the basis of sexual orientation or gender identity necessarily and intentionally discriminates against that individual at least in part on the basis of sex sufficient to state a claim. Plaintiffs contend that the Defendants, by implementing Policy 321.1, discriminated against Plaintiffs as members of the LGBTQ+ community on the basis of sex in violation of Title IX. When a teacher, or, for that matter, a student complains to Mr. Caldwell, the Title IX Coordinator, about discrimination on the basis of their sexual orientation or their gender identity, such a complaint necessarily states a claim of discrimination on the basis of sex under Title IX, and the District is obligated to investigate it as such and to provide prompt and appropriate action in response to correct the discrimination. Defendant, Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, by limiting the scope of Title IX as such, have chosen not to correct or to remedy the discrimination, and are perpetuating the District's policy of discrimination against members of the LGBTQ+ community.

35.    Third, Plaintiffs further point out and identify disparate or discriminatory treatment because, at the same time that the District polices the presence of any and all rainbows, any items relating to sexual orientation or gender identity, or any items remotely resembling support for members of the LGBTQ+ community in the District, the District permitted, and, it is believed and averred, continues to permit, religious displays by teachers in their classrooms in violation of the Policy including but not limited to a teacher, who was not LGBTQ+, who posts a sign in her

classroom which states, "As long as teachers give tests, there will be prayer in schools"; a sign in another classroom it is believed that references Jesus; a sign in Ms. Jennifer McConnell, the Assistant Principal's, office that refers to Jesus being "the Lord," or words to that effect; a worksheet given to students as part of an in-class assignment that referenced the Bible verse, Philippians 4:13; and, it is believed and averred, other religious items that are routinely permitted in the classrooms, the point being that they were not similarly prohibited or required by Defendants to be removed from the teachers' classrooms although the District's policy, Policy 321.1, also by its text prohibits the display of religious symbols and décor. The District prohibits the display of any religious symbols in writing in Policy 321.1, but, in practice, selectively or disparately enforced, and, it is believed and averred, continues to enforce the Policy against members of the LGBTQ+ community by disallowing rainbows, any items relating to sexual orientation or gender identity, or any matters remotely resembling support for the LGBTQ+ community, but at the same time allowing religious symbols that are similarly in violation of the policy. It should also be pointed out that a rainbow, according to Superintendent Whitesel, allegedly has "religious connotations," but, for some reason, according to Defendants, an actual Scripture passage does not.

36.    The District allows teachers to wear religious jewelry in the classroom including cross necklaces, allows one teacher to wear a necklace containing a Jewish Star of David, and, generally speaking, allows jewelry containing religious symbols to be worn in classrooms throughout the District. Upon information and belief, the District allows religious symbols to be worn, even large crosses or large religious items to be worn. Wearing religious jewelry is specifically carved out in Policy 321.1 as a stated exception to the Policy. *See* Policy 321.1, attached hereto as Exhibit "A," at p. 2 (exception for "[w]earing jewelry consistent with the

17

professional dress code that symbolically represents the legitimate self-expression of an individual's personal beliefs.").

37.    The District also allows teachers to routinely wear clothing containing religious messages and imagery without a penalty. The District permitted a teacher at Hollidaysburg Area Junior High School to wear a shirt in class that quoted the lyrics of a Kid Rock song, "'Til You Can't," including the lyrics, "Hanging from the cross you can give your life to Jesus[,] there's a book that's sitting in your house somewhere that could use some dusting off[,] there's a man who died for all our sins and He'll give you a second chance 'til you can't[,] 'til you can't[,] if you got a chance, take it[,] take it while you got a chance[,] if you got a dream[,] cause a dream won't chase you back[,] if we're gonna love[,] last breath and as strong and as close as you can 'til you can't[,] 'til you can't." It is believed and averred that the District allows teachers to routinely wear clothing containing other religious messages and imagery without a penalty. The wearing of clothing containing religious messages and imagery is not explicitly covered under Policy 321.1's stated exception for religious jewelry. Therefore, the wearing of clothing containing religious messages or imagery is a violation of Policy 321.1 but is nevertheless permitted to be worn by the District, because the District agrees with the message, but not with messages relating to sexual orientation or gender identity.

38.    The District also permitted and, it is believed and averred, continues to permit the school buildings to be used on a weekly basis for the "814 Bible Study." The District also permits, and it is believed and averred, continues to permit the "Young Life" Christian club to meet in the school buildings and classrooms. The District permits, and, it is believed and averred, continues to permit "See You At The Pole" Christian prayer events to be held on an annual basis at the flagpole on the school premises, and a food drive sponsored by a Catholic religious organization,

18

the Society of St. Vincent de Paul, held on a monthly basis on the school premises. Prayer during football games and other athletic events, it is believed and averred, is also permitted by Defendant, Hollidaysburg Area School District.

39. As part of graduation exercises, on or about May 17, 2026, Defendant, Hollidaysburg Area School District, also permitted local Christian ministries, specifically Hollidaysburg Ministerium and Hollidaysburg Youth Ministerium, to offer a service of worship and prayer in the auditorium which all high school students were allowed to attend. The assembly was announced to students and staff through official District communications. The communications failed to include a disclaimer stating that the District did not endorse certain religious beliefs.

40. The complete lyrics to the contemporary Christian worship song, "Come to Jesus," are displayed in the weight room near the gymnasium at Hollidaysburg Area Senior High School exhorting students to, among other things, "Come to Jesus," "Sing to Jesus," "Dance for Jesus," "Fall on Jesus," "Cry to Jesus," and "Fly to Jesus." Plaintiffs have attached a photograph below for context as it would conceivably be easy to require the removal of the below message since it is taped up with what appears to be two (2) small pieces of masking tape. The point is that the District allows the message to remain up because the District condones the message, but not a message relating to sexual orientation or gender identity because the District does not condone messages relating to sexual orientation or gender identity. A photograph of the message is contained on the following page:

19



41.    The District also permits the display of an "Angel Tree" in a central location on the school premises during the holiday season, celebrates eleven (11) days for the Christmas holiday, and one (1) day for the celebration of Hanukkah. Upon information and belief, "Merry Christmas" is also routinely displayed in the school buildings and classrooms during the holiday season. The District is believed to recognize specific religions even down to recognition in the District's announcements, it is believed and averred, of intentional references to "Christmas Break" and to

"Easter Break" rather than to "Winter Break" or to "Spring Break." The point is that religious décor, displays, events, and activities are permitted and even encouraged by the District. Pursuant to school policy, religion is recognized, even specific religions are recognized, by the District, but a display that references sexual orientation or gender identity, even a rainbow, is prohibited.

42. Every morning before class the Pledge of Allegiance is recited to the American flag by the students throughout the District. The District's policy, Policy 321.1, therefore has a stated carve-out for the American flag. *See* Policy 321.1, at Ex. "A," page 2. The District's policy also has a carve-out for "[a]ny military service branch flag" of the United States. *See id.* Plaintiffs contend that the exceptions carved out for certain flags but not for others within the Policy anticipate political speech within the District which might otherwise clearly fall within the scope of the Policy, but which is otherwise deemed appropriate, and, therefore, permitted by the District, but at the same time, there is a stated prohibition for any discussion or display of content relating to sexual orientation or gender identity including the display of a rainbow flag. Plaintiffs contend that the Policy is discriminatory based on sexual orientation and gender identity.

43. There are, in fact, seven (7) written delineated exceptions contained within the Policy, and Plaintiffs allege, in practice, that there are several other exceptions to the Policy. Plaintiffs identify these exceptions as further evidence of disparate treatment as there are a number of exceptions to the Policy including those contained within the Policy itself, for speech that the District anticipates might otherwise clearly fall within the scope of the Policy, but which is otherwise deemed appropriate, and, therefore, permitted by the District, but at the same time, there is a stated prohibition for any discussion or display of content relating to sexual orientation or gender identity. *See* Policy 321.1, attached hereto as Exhibit "A," at p. 2.

21

44.    Defendant, Hollidaysburg Area School District, sponsors and promotes the use of the "The Thin Blue Line" flags on the uniforms of its School Resource Officers ("SROs"), and/or other officers, employees, and/or agents of Defendant, Hollidaysburg Area School District, which, it is believed and averred, is a message that is believed to be sociopolitical.

45.    Defendant, Hollidaysburg Area School District, promotes the activities of the Boy Scouts of America and the Eagle Scouts of America.

46.    Black History Month is believed to still be recognized by the District. Martin Luther King, Jr. Day, on January 19th, is also recognized by the District. Students are believed to complete assignments for class relating to both Black History Month, and to Martin Luther King, Jr., Day, which are believed and averred to be part of the curricula. However, Defendant Hollidaysburg Area School District, prohibits similar reference or acknowledgment of the contributions of people who are LGBTQ+.

47.    Defendant, Hollidaysburg Area School District, holds "Sideline Cancer" games or athletic events on the school grounds throughout the District annually and sponsors and promotes them. The District sponsors and promotes "Pink Out" student events where the objective is to dress in pink, and there are signs and décor that are pink or contain messages of support for breast cancer research and awareness of its impact on women. The School District also promotes the "Go Red For Women" campaign where the objective is to dress in red, the classrooms and buildings contain signs and décor that are red, or contain messages of support for heart disease research and awareness of its impact among women. A District employee is also nominated as the "Woman of Impact." After the "Woman of Impact" has been nominated, the District recognizes her publicly.

48.     The School District's Policy, Policy 321.1, is overtly and facially discriminatory against people who are LGBTQ+ and subjects them to unequal treatment on the basis of sexual orientation and/or sex. Plaintiffs contend that the Policy's language regarding religious or political symbols is a ruse or a pretext to discriminate based on sexual orientation and gender identity against members of the LGBTQ+ community, from Plaintiffs' perspective, as explicitly stated in policy, to treat them unequally, and to treat them unfairly. The Policy goes on to specifically make clear the content to which it applies—content "… relating to sexual orientation or gender identity."—and, in practice, the Superintendent, the Principals, and other employees of the District, are alleged to use the policy to police and monitor the schools of the District for any references to sexual orientation or gender identity, but not similarly with respect to religious symbols, political symbols, or other speech about sociopolitical issues. And, once again, it is important to keep in mind that the Policy was being enforced by Defendants against Plaintiffs' display of rainbows or items relating to sexual orientation or gender identity, but not against other similar speech in a similar manner, before the Policy language was ever formally adopted. The intent behind the Policy is alleged to be a bare desire to harm LGBTQ+ people, to treat people who are LGBTQ+ unequally and unfairly, and to discriminate based on sexual orientation and gender identity against members of the LGBTQ+ community.

49.     The instant litigation is brought for the primary objective of requesting equitable or injunctive relief from this Honorable Court, requiring that the aforementioned policy of the District, Policy 321.1, and any future iteration of the policy, prohibiting rainbows, prohibiting displays relating to sexual orientation or gender identity, or prohibiting displays demonstrating support for members of the LGBTQ+ community, be immediately and permanently enjoined in the School District. Plaintiff, Ms. Doe, further requests equitable/injunctive relief requiring

23

Defendants to enforce Title IX within the District, to perform Title IX training within the District, and further requiring all members of the School Board or the School Board of Directors of Defendant, Hollidaysburg Area School District, as well as all employees of Defendant, Hollidaysburg Area School District, to undergo LGBTQ+ sensitivity training. Plaintiff, Ms. Doe, also request damages including actual damages and attorneys' fees and costs.

50.     If required, the instant claim brought by Plaintiff, Ms. Doe, alleging a violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, is brought pursuant to 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff, Jane Doe, hereby requests judgment in her favor and against Defendant, Hollidaysburg Area School District, in an amount in excess of $150,000.00, including equitable or injunctive relief requiring that the specific prohibition relating to the language, "sexual orientation or gender identity," contained in the aforementioned School District Policy, Policy 321.1, and any future iteration of the policy, be immediately enjoined, declaratory judgment and/or the issuance of a Court Order finding that the policy is discriminatory based on sex, sexual orientation, and gender identity; equitable/injunctive relief requiring Defendants to enforce Title IX within the District, to perform Title IX training within the District, and that all members of the School Board or the School Board of Directors of Defendant, Hollidaysburg Area School District, as well as all employees of Defendant, Hollidaysburg Area School District, be required to undergo LGBTQ+ sensitivity training; a requirement that Defendant, Hollidaysburg Area School District, post notice of the verdict or Court Order in this matter; as well as an award of damages to Plaintiff, Jane Doe, for any out-of-pocket costs, any actual damages, attorneys' fees, costs of suit, expert fees, and/or any other and further relief that this Court determines to be just, proper, and equitable.

## COUNT II:
### VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681, *et seq.*
### (PLAINTIFF, JANE ROE v. DEFENDANT, HOLLIDAYSBURG AREA SCHOOL DISTRICT)

51.    Plaintiff, Jane Roe, hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

52.    It is believed, and therefore, averred that, at all times relevant hereto, Defendant, Hollidaysburg Area School District, received Federal financial assistance for its educational programs and activities, and, it is believed, and therefore, averred, that Defendant, Hollidaysburg Area School District, currently receives Federal financial assistance for its educational programs and activities.

53.    Plaintiff, Jane Roe, is LGBTQ+. Plaintiff, Jane Roe, is a lesbian woman. Plaintiff, Jane Roe, has been a teacher employed by the District for nine (9) years, going on ten (10) years.

54.    Pursuant to the District's Policy, Policy 321.1, formally adopted on October 15, 2025, and beginning even before in September 2025, in an effort to purge the classrooms and school buildings throughout the District of content "... relating to sexual orientation or gender identity" in violation of Policy 321.1, Defendants required Plaintiff, Ms. Roe, to remove rainbow-colored signs, stickers, and/or decals, messages of support for the LGBTQ+ community, and any item remotely resembling support for members of the LGBTQ+ community, from her classroom.

55.    On or about September 16, 2025, Defendants required Plaintiff, Ms. Roe to remove a sign with the phrase, "Diverse, Inclusive, Accepting, Welcome Safe Space For Everyone," from outside of Ms. Roe's classroom, because the phrase was written in rainbow colors and appeared alongside rainbow colors. Defendants have prohibited the sign since that date. Defendants prohibited a similar sign by Ms. Doe during the same timeframe.

25

56.    Defendants also, on that date, September 16, 2025, notified Ms. Roe that she was required to remove a decal with the phrase, "You Are in the 100%, Be Kind, Be Inclusive," from outside of Ms. Roe's classroom, because the decal contained rainbow colors.  Defendants also required Ms. Doe to remove a similar decal during the same timeframe.

57.    Plaintiff, Ms. Roe, was, on September 16, 2025, given twenty-four (24) hours by Defendants to remove the content from outside of her classroom or else, it was implied, she would face disciplinary action, up to and including termination, or else that the items would be forcibly removed by employees of the District for Ms. Roe.  Ms. Roe complied and removed the items under protest.  Photographs of some of the rainbow-colored signs, stickers, and/or decals which Ms. Roe was required to remove are included below:

 

58.    On or about October 27, 2025, Defendants required Ms. Roe to remove a sticker from the outside of her classroom which read, "Diversity is a fact, inclusion is an act," because the word, "Diversity," and the word, "Inclusion," were written in rainbow colors.  Mr. McCall did not provide Ms. Roe an opportunity to remove the aforementioned item before Mr. McCall removed it from Ms. Roe's classroom himself and is believed and averred to have discarded it.  It is believed and averred that Mr. McCall required the removal of the sticker, "Diversity is a fact, inclusion is an act," because the word, "Diversity," and the word, "Inclusion," were written in rainbow colors.

59.    In or about November 19, 2025, Defendant, Superintendent, Curtis Whitesel, performed an inspection of Plaintiff, Ms. Roe's, classroom, and located the Bi Pride Flag on Ms. Doe's desk. Defendant, Superintendent Whitesel, inspected the flag but did not initially know what the flag represented. Superintendent Whitsel requested that Plaintiff, Ms. Roe, "Google the flag" for him, or words to that effect. Ms. Roe complied and brought up an image of the Bi Pride flag on her phone for Superintendent Whitesel. However, once Superintendent Whitesel discovered that the flag was the Bi Pride flag, he ordered that the flag be immediately removed from Ms. Roe's desk. The flag has been prohibited by Defendants since that time.

60.    In or about November 2025, Defendants also required the removal of a Pride flag from Ms. Roe's desk. Mr. McCall communicated the requirement that the flag be removed from Ms. Roe's desk on behalf of Defendant, Hollidaysburg Area School District, and, it is believed and averred, by the order of Superintendent Whitesel.

61.    It is believed that during the time period from in or about September 2025 through November 2025, Curtis Whitesel, Superintendent of the School District, visited Hollidaysburg Area Junior High School, in person, multiple times, in order to police the school buildings for purposes of purging material "… relating to sexual orientation or gender identity" in violation of Policy 321.1. Mr. Whitesel, the Superintendent of Hollidaysburg Area School District, policed Plaintiff, Ms. Roe's, classroom, and, it is believed and averred, routinely polices the classrooms and school buildings throughout the District, in order to purge references "… relating to sexual orientation or gender identity," or which in any way remotely resemble support for members of the LGBTQ+ community, in violation of Policy 321.1.

62.    On or about October 31, 2025, Defendant, Hollidaysburg Area School District, held an official in-service training with Plaintiffs and with other teachers and administrators of the

27

School District in attendance. The training was held at Hollidaysburg Area Senior High School and conducted by Superintendent Whitesel. At the in-service training, Superintendent Whitesel read the entire room the text of Policy 321.1. Plaintiffs were specifically instructed by Superintendent Whitesel during the training that, pursuant to Policy 321.1, the classrooms could not contain messages that had any reference to sexual orientation or gender identity, or words to that effect. Ms. Doe asked Superintendent Whitesel a question in front of the group about why she would have to remove such items from her classroom as a violation of the Policy, or words to that effect. Superintendent Whitesel responded to Ms. Doe in front of the group that it was "because rainbows have religious connotations," or words to that effect.

63.     In order to provide further context for Defendants' homophobic actions committed against Ms. Roe, previously, in or about academic year 2023, Defendant, Hollidaysburg Area School District, also required the removal of books from Ms. Roe's classroom. Ms. Roe teaches Composition and also Journalism for Defendant, Hollidaysburg Area School District. Defendant, Hollidaysburg Area School District, required the removal of books from Ms. Roe's classroom simply because the books included LGBTQ+ characters, had LGBTQ+ content, or LGBTQ+ themes. More specifically, former Assistant Superintendent, Dr. Sarah Palazzi, and former Principal, Mr. Kenneth Krott, who were employees of Defendant, Hollidaysburg Area School District, entered Ms. Roe's classroom and physically removed books from the bookshelf of her classroom, specifically the bookshelf which was accessible to and used by students in Ms. Roe's classes. On behalf of the District, Dr. Palazzi and Mr. Krott entered Ms. Roe's classroom and physically removed the following books from Ms. Roe's bookshelf, and did not permit the following books to be present in Ms. Roe's classroom, simply because they contained LGBTQ+ characters, content, or themes: *Will Grayson, Will Grayson; Looking for Alaska; Laura Dean*

*Keeps Breaking Up With Me; A Study in Charlotte; Paper Towns;* and *Brazen: Rebel Ladies Who Rocked the World. Brazen: Rebel Ladies Who Rocked the World* is a non-fiction book referencing historical figures, and, it is believed, and, therefore, averred, that the book was removed from the bookshelf accessible to students in Ms. Roe's classroom by Dr. Palazzi and Mr. Krott simply because the book identified certain of the historical figures in the book as being women who were LGBTQ+. Defendant, Hollidaysburg Area School District, and Defendant, Curtis Whitesel, are believed and averred to continue to be enforcing the ban on the aforementioned books including up to the present.

64.    Furthermore, in or about academic year 2023, Defendant, Hollidaysburg Area School District, specifically Dr. Robert J. Gildea, former Superintendent of Defendant, Hollidaysburg Area School District, prohibited Ms. Roe from teaching *They Called Us Enemy*, by George Takei, because of the political climate including with respect to LGBTQ+ individuals. George Takei is an openly gay individual. It is alleged that Defendant, Hollidaysburg Area School District, and Defendant, Curtis Whitesel, are believed and averred to continue to be enforcing the prohibition on teaching *They Called Us Enemy*, by George Takei, being taught by Plaintiff, Ms. Roe, up to and including the present.

65.    During a School Board meeting held on or about March 18, 2026, the novel, *Sugar Shack*, was also banned from the District's school libraries by the Board because, as determined by Board member, Ms. Ying Li, during the Board meeting held on that date, the novel, *Sugar Shack*, had a potentially gay character in it, or words to that effect. In reality, the book contains a single reference to a character identified as male who states, "My husband will be here later," or words to that effect. The mere existence of a gay character in the novel, *Sugar Shack*, was

29

sufficient for Defendant, Hollidaysburg Area School District's, Board to ban the book throughout the entire District.

66.   In or about April 2026, during another School Board meeting, Ms. Ying Li, School Board member, further stated an intent to ban the use of the required Advanced Placement ("A.P.") Psychology textbook simply because it mentioned sexual orientation as part of human sexuality. It should be noted that for an A.P. class, the A.P. Board actually sets the appropriate curriculum, including providing a list of textbooks that should be used for the A.P. class.   To further demonstrate the extent of the School District's blatant homophobia, Ms. Li, School Board member, further stated on that date that she wanted to reach out to the publisher to see if she could have the textbook revised without that content contained within it, or words to that effect.

67.   During a School Board meeting held on or about May 13, 2026, the novel, *Just Like Jackie*, was also banned from the District's school libraries by the Board because of a gay character, or words to that effect, as determined by Board member, Ms. Li, during the Board meeting held on that date.

68.   In addition, during the Board meeting held on or about May 13, 2026, the novel, *War Games*, was also banned from the District's school libraries by the Board because it has a gay character, or words to that effect, as determined by Board member, Ms. Li, during the Board meeting held on that date.

69.   Additionally, in or about October 2022, Defendant, Hollidaysburg Area School District, previously attempted to take adverse employment action against Ms. Roe unjustifiably, on the basis of her sexual orientation and/or her sex, because Ms. Roe was reportedly found to have a book with LGBTQ+ content, *Gender Queer: A Memoir*, on her desk.  Ms. Roe strenuously denies teaching the book to students.  Ms. Roe was reading the book because the Pennsylvania

State Education Association ("PSEA") Center for Professional Learning was holding an "Act 48 training" with teachers in which that specific book, *Gender Queer: A Memoir*, was going to be discussed. More specifically, the syllabus for the aforementioned training read, "Join Dr. Gina Gullo in reading and discussing one of 2022's most frequently banned books. *Gender Queer* explores the experiences of one youth as they begin to understand their identity. Participants will gain insight into the complicated world of gender identity and engage in a deeper exploration of the intersection of politics, policy, and social justice faced by today's educators." *See* Syllabus, PSEA September & October 2022 Professional Development Opportunities, at p. 1. Defendant, Hollidaysburg Area School District, requires teachers to maintain a certain number of professional development hours. It is further believed and averred that teachers who are not LGBTQ+ are permitted to have materials that do not contain LGBTQ+ content in their classrooms that are related to the teachers' required professional development trainings. Ms. Roe was subsequently called into a meeting to discuss potential disciplinary action. Defendant, Principal Dale McCall; Defendant, Title IX Coordinator, Mr. Benjamin Caldwell; and former Superintendent of Defendant, Hollidaysburg Area School District, Dr. Robert J. Gildea, were also present for the meeting with Ms. Roe to discuss potential disciplinary action. Mr. Caldwell was present because Defendant, Hollidaysburg Area School District, was wrongfully accusing Ms. Roe of allegedly violating the District's sexual harassment policy by accusing Ms. Roe of teaching "child pornography," or words to that effect, which is strenuously denied. To further underscore the disparate treatment based on sexual orientation and/or sex occurring in the instant matter, it should be pointed out that, while Defendant, Hollidaysburg Area School District, sought to wrongfully enforce the Title IX policy prohibiting sexual harassment against Ms. Roe, afterward, the District was perfectly willing to, in Principal McCall's words, "abolish" Title IX training throughout the

31

District entirely, rather than, it is believed, have to teach that individuals are protected from discrimination based on their sexual orientation or their gender identity as discrimination on the basis of sex pursuant to Title IX. Ms. Roe was wrongfully suspended by the District for allegedly having the aforementioned book on her desk. Ms. Roe filed a grievance and on appeal the arbitrator ruled in Ms. Roe's favor to vacate the suspension and she was reinstated. The District nonetheless appealed the arbitrator's decision to vacate the suspension. Although the District attempted to overturn the arbitrator's decision on appeal to the Court of Common Pleas of Blair County, Pennsylvania, the Common Pleas Court rejected that attempt and the arbitrator's decision to vacate the suspension was upheld. Ms. Roe contends that she was ultimately exonerated from any alleged wrongdoing as her suspension was subsequently overturned by the arbitrator in Ms. Roe's favor and that decision was upheld by the Common Pleas Court.

70.    Dr. Robert J. Gildea, former Superintendent of Defendant, Hollidaysburg Area School District, had also previously instructed teachers not to ask students what their pronouns were, and had also previously asked for the teachers not to refer to themselves, or to other teachers, using preferred pronouns, or words to that effect.

71.    During the time period of the circumstances involving Ms. Roe's wrongful suspension simply for possessing *Gender Queer: A Memoir* on her desk, the allegation against Ms. Roe was unnecessarily publicized to her detriment. As a result, Ms. Roe received anonymous e-mails, ostensibly from parents or community members, whose identities are unknown, including e-mails where she was offensively called a "pedophilic pig," which is denied; a "pedophile," which is denied; a "groomer" of children, which is denied; that Ms. Roe should be terminated from her job; a message stating, "You are a piece of shit. Pushing you're [*sic.*] views on fucking children. You deserve to rot in hell for what you're doing. You think you're changing the world, making it

32

a better place. But you're not. You're pushing you're [*sic.*] views on FUCKING CHILDREN. I hope you fucking die you stupid bitch. Burn in hell forever. FUCK YOU!"; and a threatening voicemail message that included, "You're supposing to be teaching reading, writing, and arithmetic, not how to have gay sex," and "I'm coming for you," or words to that effect.

72.    In or about February 2023, following the time period of the aforementioned harassment, Ms. Roe also discovered a Pride flag that she hung outside her home was riddled with bullet holes. Ms. Roe photographed and reported the matter to the police when it occurred and was provided an Incident Report number. *See* Photograph of Plaintiff, Jane Roe's, Pride Flag, attached hereto as Exhibit "E."

73.    In or about November 2025, Plaintiff, Ms. Roe filed an internal complaint with the Defendant, Hollidaysburg Area School District's, HR department about being discriminated against including but not limited to by being required to remove the aforementioned rainbow signs, stickers, and/or decals, and messages of support for members of the LGBTQ+ community, as part of the School District's Policy prohibiting displays relating to sexual orientation or gender identity. Ms. Roe filed her Complaint with Defendant, Mr. Benjamin Caldwell, in order to attempt to resolve the instant matter prior to filing the litigation. On January 16, 2026, the School District, by and through Mr. Caldwell, provided the same response to both of Plaintiffs' complaints, determining that there was not a violation of Title VII of the Civil Rights Act of 1964, or of Title IX of the Education Amendments of 1972. Although Defendants did not inform Plaintiffs about their right to appeal that decision, on or about February 3, 2026, Plaintiffs both appealed the Title IX determination by the District that was provided by Mr. Caldwell in accordance with the School District's policy requiring appeals to be submitted within fifteen (15) school days. In response to

33

Plaintiffs' appeals, on February 27, 2026, Defendant, Curtis Whitesel, notified Plaintiffs that the District was upholding the determination on Plaintiffs' complaints.

74.    Mr. Caldwell argued in response to Plaintiffs' complaints that teachers who were LGBTQ+, and teachers who were not LGBTQ+, were being forced to remove LGBTQ+ content from their classrooms. However, first and foremost, the District's argument was already rejected by the Supreme Court of the United States in *Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020), which remains the law. Plaintiffs contend that the Policy is discriminatory based on sexual orientation and gender identity, is inherently discriminatory, and treats similarly situated individuals differently on the basis of sexual orientation and gender identity. Plaintiffs contend they were discriminated against as LGBTQ+ people on the basis of sex.

75.    Second, Mr. Caldwell stated to Plaintiffs in response to their internal complaints under Title IX, that Title IX protected three categories:

> Discrimination under Title IX falls into one of three categories applicable to employees. The first is related to the exchange of unwelcome sexual conduct, or "quid pro quo" sexual harassment, which is not alleged here. The second is conduct that is "severe, pervasive, and objectively offensive" such that it denies a person equal access to a district education program or activity. None of the allegations appear to rise to this level. Thirdly, a Title IX complaint may be brought in regards to sexual assault, dating violence, domestic violence, or stalking. None of these offenses are alleged.

*See* Letter Response of Mr. Caldwell to Plaintiff's Internal Complaint, at page 1.

Plaintiffs contend that this is not accurate as, according to *Bostock, supra*, any adverse employment action being taken against an employee on the basis of sexual orientation or gender identity necessarily and intentionally discriminates against that individual at least in part on the basis of sex sufficient to state a claim. Discrimination based on sexual orientation is discrimination on the basis of sex. Defendants failed to prevent, correct, and remedy discrimination based on sexual orientation of which Defendants had actual knowledge in violation of Title IX. Defendants

34

did not provide equivalent levels of protection to individuals who are LGBTQ+ and individuals who are not LGBTQ+ under Title IX.

76.    Third, Plaintiff, Ms. Roe, identifies disparate or discriminatory treatment because, at the same time that the District polices the presence of any and all rainbows, any items relating to sexual orientation or gender identity, or any items remotely resembling support for members of the LGBTQ+ community in the District, the District permitted, and, it is believed and averred, continues to permit religious, political, and sociopolitical symbols, décor, displays, and activities in teachers' classrooms or conspicuous areas of the school that similarly violate the text of the policy, including but not limited to:  a sign in a teacher's classroom which states, "As long as teachers give tests, there will be prayer in schools"; another sign in another classroom referencing Jesus; a sign in the Assistant Principal's office referring to Jesus as "the Lord," or words to that effect; a worksheet given to students with the Bible verse, Philippians 4:13; it is believed and averred, other religious items that are routinely permitted in the classrooms; the complete lyrics to the contemporary Christian worship song, "Come to Jesus," taped up in the weight room near the gym exhorting students to, among other things, "Come to Jesus," "Sing to Jesus," "Dance for Jesus," "Fall on Jesus," "Cry to Jesus," and "Fly to Jesus"; religious jewelry including cross necklaces and a Jewish Star of David which teachers are permitted to wear in the classroom; religious clothing which teachers are permitted to wear in the classroom including a shirt containing Christian lyrics which are part of a Kid Rock song called, "'Til You Can't"; the "814 Bible Study" held weekly in the school buildings and classrooms; the "Young Life" Christian club which is permitted to meet in the school buildings and classrooms; annual "See You At The Pole" Christian prayer events; a monthly food drive sponsored by a Catholic religious organization, the Society of St. Vincent de Paul; prayer during football games and other athletic events; youth

ministries permitted to offer worship services and/or prayer meetings in the school auditorium; the display of an "Angel Tree"; "Merry Christmas" displayed in the school buildings and classrooms; intentional references to "Christmas Break" and to "Easter Break" rather than to "Winter Break" or to "Spring Break"; every morning the Pledge of Allegiance being recited to the American flag by the students throughout the District; "[a]ny military service branch flag" of the United States being permitted to be displayed; seven (7) specifically delineated exceptions contained in the Policy, and Plaintiffs allege, in practice, several other exceptions to the Policy; the District holding "Sideline Cancer" games or athletic events annually; the District sponsoring "Pink Out" student events to promote awareness of the risk of breast cancer among women; the District promoting a "Go Red For Women" campaign to increase awareness of the risk of heart disease among women including recognizing a "Woman of Impact" as part of the campaign; permitting the Boy Scouts of America and the Eagle Scouts of America to meet in the school buildings and classrooms; observing Black History Month and Martin Luther King, Jr. Day including having coursework associated with both; and sponsoring the "The Thin Blue Line" flags on School Resource Officers' uniforms and/or on the uniforms of other officers, employees, and/or agents of the District. However, a rainbow sticker in support of the LGBTQ+ community is not allowed.

77.     If required, the instant claim brought by Plaintiff, Ms. Roe, alleging a violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, is brought pursuant to 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff, Jane Roe, hereby requests judgment in her favor and against Defendant, Hollidaysburg Area School District, in an amount in excess of $150,000.00, including equitable or injunctive relief requiring that the specific prohibition relating to the language, "sexual orientation or gender identity," contained in the aforementioned School District Policy, Policy

321.1, and any future iteration of the policy, be immediately enjoined, declaratory judgment and/or the issuance of a Court Order finding that the policy is discriminatory based on sex, sexual orientation, and gender identity; equitable/injunctive relief requiring Defendants to enforce Title IX within the District, to perform Title IX training within the District, and that all members of the School Board or the School Board of Directors of Defendant, Hollidaysburg Area School District, as well as all employees of Defendant, Hollidaysburg Area School District, be required to undergo LGBTQ+ sensitivity training; a requirement that Defendant, Hollidaysburg Area School District, post notice of the verdict or Court Order in this matter; as well as an award of damages for past and future medical expenses related to psychological, psychiatric, or other care incurred by Ms. Roe due to Defendant, Hollidaysburg Area School District's, discriminatory acts, any economic damages, any out-of-pocket costs, any actual damages, attorneys' fees, costs of suit, expert fees, and/or any other and further relief that this Court determines to be just, proper, and equitable.

**COUNT III:**
**42 U.S.C. § 1983 – VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION – BASED ON SEXUAL ORIENTATION AND/OR SEX**
**(PLAINTIFF, JANE DOE v. DEFENDANT, HOLLIDAYSBURG AREA SCHOOL DISTRICT; CURTIS WHITESEL, IN HIS INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY AS SUPERINTENDENT OF HOLLIDAYSBURG AREA SCHOOL DISTRICT; DALE McCALL, IN HIS INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY AS PRINCIPAL OF HOLLIDAYSBURG AREA JUNIOR HIGH SCHOOL; AND BENJAMIN CALDWELL, IN HIS INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY AS TITLE IX COORDINATOR OF DEFENDANT, HOLLIDAYSBURG AREA SCHOOL DISTRICT)**

78.    Plaintiff, Jane Doe, hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

79.    Plaintiff, Jane Doe, was a person "subjected … to [] deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States," pursuant to School District Policy 321.1, which constitutes a "regulation, custom, or usage" pursuant to 42

U.S.C. § 1983. School District Policy 321.1 constitutes a policy, practice, or custom of discrimination based on sexual orientation and gender identity.

80.    It is believed, and, therefore, averred that, at all times relevant hereto, Defendants, Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell were state actors in that they acted under color of state law in "subject[ing]" Plaintiff, Jane Doe, "to deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States" pursuant to 42 U.S.C. § 1983.

81.    Plaintiff, Jane Doe, is LGBTQ+. Plaintiff, Ms. Doe, is a lesbian woman. Plaintiff, Ms. Doe, has been a teacher employed by Defendant, Hollidaysburg Area School District, for approximately fifteen (15), going on sixteen (16), years.

82.    The School Board of Defendant, Hollidaysburg Area School District, on account of hatred toward members of the LGBTQ+ community, including its own LGBTQ+ teachers like Plaintiff, Jane Doe, and its own LGBTQ+ students, on October 15, 2025, voted 8-0 to formally pass a blatantly homophobic, District-wide policy that explicitly states, in pertinent part, for purposes of this action: "Décor related to … sexual orientation or gender identity, in the classroom, and in the school buildings, and/or at school activities is prohibited," and expressly prohibits "any flag, banner, poster, sign, sticker, pin, button, insignia, paraphernalia, photograph, or other similar material that advocates concerning … sexual orientation or gender identity." *See* the Policy of the Hollidaysburg Area School District, Policy 321.1, a true and correct copy of which is attached hereto as Exhibit "A," at pages 1-2.

83.    Although the Policy with the new prohibition containing the language, " … sexual orientation or gender identity," was passed formally by the School Board on October 15, 2025, the Policy was previously discussed in September 2025 during School Board meetings by the

38

District's School Board members that the Policy was going to be put up for a vote. The Policy began to be enforced by Defendants, Whitesel and McCall, even before its formal adoption on October 15, 2025, in September 2025, by the Defendants, Hollidaysburg Area School District, and specifically Mr. Whitesel and Mr. McCall. Plaintiff, Ms. Doe, alleges that this is further evidence of the true intent behind the Policy, to discriminate based on sexual orientation or gender identity, even before the language of the policy applicable to "sexual orientation or gender identity" was even officially adopted.

84.    Defendants, at all times relevant hereto, required Ms. Doe to remove a Pride flag, rainbow-colored signs, stickers, and/or decals, messages of acceptance for members of the LGBTQ+ community, and any item remotely resembling support for members of the LGBTQ+ community, from her classroom, all as part of Defendants' efforts to purge the schools throughout the District of any and all references to sexual orientation or gender identity.

85.    On or about October 31, 2025, Defendant, Hollidaysburg Area School District, held an official in-service training with Plaintiffs and with other teachers and administrators of the School District in attendance. The training was held at Hollidaysburg Area Senior High School and conducted by Superintendent Whitesel. At the in-service training, Superintendent Whitesel read the entire room the text of Policy 321.1. Plaintiffs were specifically instructed by Superintendent Whitesel during the training that, pursuant to Policy 321.1, the classrooms could not contain messages that had any reference to sexual orientation or gender identity, or words to that effect. Ms. Doe asked Superintendent Whitesel a question in front of the group about why she would have to remove such items from her classroom as a violation of the Policy, or words to that effect. Superintendent Whitesel responded to Ms. Doe in front of the group that it was "because rainbows have religious connotations," or words to that effect. It should also be pointed

out that a rainbow, according to Superintendent Whitesel, allegedly has "religious connotations," but, for some reason, according to Defendants, an actual Scripture passage does not.

86.    On or about October 27, 2025, Mr. McCall removed a Pennsylvania Department of Education poster from Plaintiff, Ms. Doe's, classroom.  Mr. McCall informed Ms. Doe about the removal of the poster on a date that Ms. Doe was off from work, and on that date did not give Ms. Doe a chance to remove the item prior to Mr. McCall removing the item.  Mr. McCall informed Ms. Doe that he was removing the poster "as it mentions gender identity," in other words, solely on the basis that the poster mentioned gender identity.  *See* E-mail Correspondence from Principal, Dale McCall, to Plaintiff, Ms. Doe, dated October 27, 2025, a true and correct copy of which is attached hereto as Exhibit "B," redacted of Plaintiff's name consistent with Plaintiff's Motion to Proceed Anonymously; *see also* Pennsylvania Department of Education poster, a true and correct copy of which is attached hereto as Exhibit "C," with the prohibited language, "gender identity," highlighted by Undersigned Counsel in the version attached hereto for reference.  The poster was actually created by the Pennsylvania Department of Education.  Further, the poster was identified as material to be downloaded during an online in-service training required to be taken by Defendant, Hollidaysburg Area School District, for teachers employed by the District.  "Gender identity" was simply being referenced on the poster as one of the protected classes of individuals for purposes of the District's non-discrimination statement.

87.    In or about November 2025, Plaintiffs, including Ms. Doe, brought internal complaints to the Defendant, Hollidaysburg Area School District's, HR department about being discriminated against and being required to remove the aforementioned items.  Specifically, Plaintiffs brought their complaints to Defendant, Mr. Benjamin Caldwell, in order to attempt to resolve the instant matter prior to filing the litigation.  Mr. Caldwell works in the HR department,

40

and is also the Title IX Coordinator for the School District. Defendants, Hollidaysburg Area School District and Benjamin Caldwell, denied Ms. Doe's complaint. Defendants did not provide equivalent levels of protection to individuals who are LGBTQ+ and individuals who are not LGBTQ+ under the Equal Protection Clause. At all times relevant hereto, Defendant, Hollidaysburg Area School District, operated a policy, practice, and/or custom of not providing equivalent levels of protection for LGBTQ+ people and non-LGBTQ+ people.

88.     Defendants are alleged to selectively or disparately enforce the Policy against members of the LGBTQ+ community as they do not similarly enforce the Policy to require the removal of other religious, political, or sociopolitical items that violate the Policy. Plaintiff, Ms. Doe, identifies disparate or discriminatory treatment because, at the same time that the District polices the presence of any and all rainbows, any items relating to sexual orientation or gender identity, or any items remotely resembling support for members of the LGBTQ+ community in the District, the District permitted, and, it is believed and averred, continues to permit religious, political, and sociopolitical symbols, décor, displays, and activities in teachers' classrooms or conspicuous areas of the school that similarly violate the text of the policy, including but not limited to: a sign in a teacher's classroom which states, "As long as teachers give tests, there will be prayer in schools"; another sign in another classroom referencing Jesus; a sign in the Assistant Principal's office referring to Jesus as "the Lord," or words to that effect; a worksheet given to students with the Bible verse, Philippians 4:13; it is believed and averred, other religious items that are routinely permitted in the classrooms; the complete lyrics to the contemporary Christian worship song, "Come to Jesus," taped up in the weight room near the gym exhorting students to, among other things, "Come to Jesus," "Sing to Jesus," "Dance for Jesus," "Fall on Jesus," "Cry to Jesus," and "Fly to Jesus"; religious jewelry including cross necklaces and a Jewish Star of David

41

which teachers are permitted to wear in the classroom; religious clothing which teachers are permitted to wear in the classroom including a shirt containing Christian lyrics which are part of a Kid Rock song called, "'Til You Can't"; the "814 Bible Study" held weekly in the school buildings and classrooms; the "Young Life" Christian club which is permitted to meet in the school buildings and classrooms; annual "See You At The Pole" Christian prayer events; a monthly food drive sponsored by a Catholic religious organization, the Society of St. Vincent de Paul; prayer during football games and other athletic events; youth ministries permitted to offer worship services and/or prayer meetings in the school auditorium; the display of an "Angel Tree"; "Merry Christmas" displayed in the school buildings and classrooms; intentional references to "Christmas Break" and to "Easter Break" rather than to "Winter Break" or to "Spring Break"; every morning the Pledge of Allegiance being recited to the American flag by the students throughout the District; "[a]ny military service branch flag" of the United States being permitted to be displayed; seven (7) specifically delineated exceptions contained in the Policy, and Plaintiffs allege, in practice, several other exceptions to the Policy; the District holding "Sideline Cancer" games or athletic events annually; the District sponsoring "Pink Out" student events to promote awareness of the risk of breast cancer among women; the District promoting a "Go Red For Women" campaign to increase awareness of the risk of heart disease among women including recognizing a "Woman of Impact" as part of the campaign; permitting the Boy Scouts of America and the Eagle Scouts of America to meet in the school buildings and classrooms; observing Black History Month and Martin Luther King, Jr. Day including having coursework associated with both; and sponsoring the "The Thin Blue Line" flags on School Resource Officers' uniforms and/or on the uniforms of other officers, employees, and/or agents of the District.  However, a rainbow sticker in support of the LGBTQ+ community is not allowed.

42

89.    At all times relevant hereto, Defendant, Hollidaysburg Area School District, operated a policy, practice, and/or custom of discriminating based on sexual orientation and gender identity, stigmatizing LGBTQ+ individuals, and treating LGBTQ+ people as inherently unequal. It is averred that the passage and implementation of the language, "sexual orientation or gender identity," in Policy 321.1, was on account of a bare desire to harm people who are LGBTQ+.

90.    School District Policy 321.1 is an official policy of the School District that discriminates based on sexual orientation or gender identity and that treats LGBTQ+ people as inherently unequal. School District Policy 321.1 facially discriminates against Plaintiff, Jane Doe, as a member of the LGBTQ+ community. Alternatively, School District Policy 321.1 is discriminatory based on sexual orientation as applied to Plaintiff, Jane Doe.

91.    Plaintiff, Ms. Doe, contends that strict scrutiny and/or a heightened or intermediate level of scrutiny applies to the instant claim. People who are gay or lesbian constitute an insular class of individuals who have historically been discriminated against based on sexual orientation and gender identity. Sex-based classifications also require the application of a heightened or intermediate level of scrutiny. Alternatively, there is no rational basis for Policy 321.1's prohibition relating to sexual orientation or gender identity. Defendants denied Plaintiff, Ms. Doe, equal protection based on sexual orientation and/or sex.

92.    Mr. Whitesel, had final decision-making authority, at all times relevant hereto.

93.    In the alternative, Mr. Dale McCall, had final decision-making authority, at all times relevant hereto. Mr. McCall is also believed to have been ordered by Mr. Whitesel to carry out the removal of content relating to sexual orientation or gender identity. It was Mr. McCall who delivered the communication to Plaintiff, Ms. Doe, that the items should be removed on most of the aforementioned occasions.

94.     In the alternative, Mr. Caldwell, had final decision-making authority, at all times relevant hereto. A proper determination by Mr. Caldwell would have resulted in the discriminatory acts alleged being corrected and remedied.

95.     Mr. Whitesel, Mr. McCall, and Mr. Caldwell personally participated in and were personally involved in the aforementioned discriminatory acts alleged herein.

96.     Defendants, Hollidaysburg Area School District, Whitesel, McCall, and Caldwell failed to adequately train employees and/or agents of Defendant, Hollidaysburg Area School District. The lack of training was so severe that it amounted to deliberate indifference to Plaintiff, Ms. Doe's, rights. The failure to train constituted deliberate indifference. There is a causal connection between the failure to train and the alleged constitutional violation.

97.     The instant claim brought by Plaintiff, Ms. Doe, is brought pursuant to 42 U.S.C. § 1983.

98.     Plaintiff, Ms. Doe, has suffered emotional distress, pain and suffering, humiliation and embarrassment, and loss of enjoyment of life and life's pleasures, on account of Defendants' discrimination, and for which Plaintiff, Ms. Doe, seeks damages. Plaintiff, Ms. Doe, specifically requests damages including any economic damages, compensatory damages for pain and suffering, humiliation and embarrassment, emotional distress, punitive damages, and attorneys' fees and costs, to the extent allowed by applicable law, against Defendant, Hollidaysburg Area School District, and against Defendants Whitesel, McCall, and Caldwell, in their individual capacities.

99.     Plaintiff, Ms. Doe, seeks equitable/injunctive relief against Defendant, Hollidaysburg Area School District, and Defendants Whitesel, McCall, and Caldwell in their official capacities, requiring that the specific prohibition relating to the language, "sexual orientation or gender identity," contained in the aforementioned School District Policy, Policy

321.1, and any future iteration of the policy, be immediately and permanently enjoined, declaratory judgment and/or the issuance of a Court Order finding that the policy is discriminatory based on sexual orientation and gender identity; a requirement that Defendant, Hollidaysburg Area School District, post notice of the verdict or Court Order in this matter, and any further relief that this Court determines to be just, proper, and equitable.

**WHEREFORE**, Plaintiff, Jane Doe, hereby requests judgment in her favor and against Defendants, Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, individually, and/or jointly and severally, in an amount in excess of $150,000.00, including against Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their individual capacities, individually and/or jointly and severally, for economic damages, out-of-pocket expenses, and actual damages; and against Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their individual capacities, individually and/or jointly and severally, for compensatory damages for pain and suffering, embarrassment and humiliation, loss of enjoyment of life and life's pleasures, emotional distress, and punitive damages; and as against Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their individual and/or official capacities, for attorneys' fees, costs of suit, expert fees, and against Hollidaysburg Area School District, and against Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their official capacities, for equitable and injunctive relief including equitable/injunctive relief requiring that the specific prohibition relating to the language, "sexual orientation or gender identity," contained in the aforementioned School District Policy, Policy 321.1, and any future iteration of the policy, be immediately and permanently enjoined, declaratory judgment and/or the issuance of a Court Order finding that the policy is discriminatory based on sexual orientation and gender identity; equitable/injunctive relief that all members of the School

Board or the School Board of Directors of Defendant, Hollidaysburg Area School District, as well as all employees of Defendant, Hollidaysburg Area School District, be required to undergo LGBTQ+ sensitivity training; a requirement that Defendant, Hollidaysburg Area School District, post notice of the verdict or Court Order in this matter, and any further relief that this Court determines to be just, proper, and equitable.

## COUNT IV:
### 42 U.S.C. § 1983 – VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION – BASED ON SEXUAL ORIENTATION AND/OR SEX
### (PLAINTIFF, JANE ROE v. DEFENDANT, HOLLIDAYSBURG AREA SCHOOL DISTRICT; CURTIS WHITESEL, IN HIS INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY AS SUPERINTENDENT OF HOLLIDAYSBURG AREA SCHOOL DISTRICT; DALE McCALL, IN HIS INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY AS PRINCIPAL OF HOLLIDAYSBURG AREA JUNIOR HIGH SCHOOL; AND BENJAMIN CALDWELL, IN HIS INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY AS TITLE IX COORDINATOR OF DEFENDANT, HOLLIDAYSBURG AREA SCHOOL DISTRICT)

100.    Plaintiff, Jane Roe, hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

101.    School District Policy 321.1 constitutes a "regulation, custom, or usage" pursuant to 42 U.S.C. § 1983.  School District Policy 321.1 constitutes a policy, practice, or custom of discrimination based on sexual orientation and gender identity.  Alternatively, Defendants, Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell were state actors in that they acted under color of state law in "subject[ing]" Plaintiff, Jane Roe, "to deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States" pursuant to 42 U.S.C. § 1983.

102.    Plaintiff, Jane Roe, is LGBTQ+.  Plaintiff, Jane Roe, is a lesbian woman.  Plaintiff, Jane Roe, has been a teacher employed by the District for nine (9) years, going on ten (10) years.

46

103.    Pursuant to the District's Policy, Policy 321.1, formally adopted on October 15, 2025, and beginning even before in September 2025, in an effort to purge the classrooms and school buildings throughout the District of content "... relating to sexual orientation or gender identity" in violation of Policy 321.1, Defendants required Plaintiff, Ms. Roe, to remove a Pride flag from her desk, a Bi Pride flag from her desk, to remove rainbow-colored signs, stickers, and/or decals, messages of support for the LGBTQ+ community, and any item remotely resembling support for members of the LGBTQ+ community from her classroom.

104.    On or about October 31, 2025, Defendant, Hollidaysburg Area School District, held an official in-service training with Plaintiffs and with other teachers and administrators of the School District in attendance.  The training was held at Hollidaysburg Area Senior High School and conducted by Superintendent Whitesel.  At the in-service training, Superintendent Whitesel read the entire room the text of Policy 321.1.  Plaintiffs were specifically instructed by Superintendent Whitesel during the training that, pursuant to Policy 321.1, the classrooms could not contain messages that had any reference to sexual orientation or gender identity, or words to that effect.  Ms. Doe asked Superintendent Whitesel a question in front of the group about why she would have to remove such items from her classroom as a violation of the Policy, or words to that effect.  Superintendent Whitesel responded to Ms. Doe in front of the group that it was "because rainbows have religious connotations," or words to that effect.  It should also be pointed out that a rainbow, according to Superintendent Whitesel, allegedly has "religious connotations," but, for some reason, according to Defendants, an actual Scripture passage does not.

105.    Defendants are alleged to selectively or disparately enforce the Policy against members of the LGBTQ+ community as they do not similarly enforce the Policy to require the removal of other religious, political, or sociopolitical items that violate the Policy.  Plaintiff, Ms.

Roe, identifies disparate or discriminatory treatment because, at the same time that the District polices the presence of any and all rainbows, any items relating to sexual orientation or gender identity, or any items remotely resembling support for members of the LGBTQ+ community in the District, the District permitted, and, it is believed and averred, continues to permit religious, political, and sociopolitical symbols, décor, displays, and activities in teachers' classrooms or conspicuous areas of the school that similarly violate the text of the policy, including but not limited to: a sign in a teacher's classroom which states, "As long as teachers give tests, there will be prayer in schools"; another sign in another classroom referencing Jesus; a sign in the Assistant Principal's office referring to Jesus as "the Lord," or words to that effect; a worksheet given to students with the Bible verse, Philippians 4:13; it is believed and averred, other religious items that are routinely permitted in the classrooms; the complete lyrics to the contemporary Christian worship song, "Come to Jesus," taped up in the weight room near the gym exhorting students to, among other things, "Come to Jesus," "Sing to Jesus," "Dance for Jesus," "Fall on Jesus," "Cry to Jesus," and "Fly to Jesus"; religious jewelry including cross necklaces and a Jewish Star of David which teachers are permitted to wear in the classroom; religious clothing which teachers are permitted to wear in the classroom including a shirt containing Christian lyrics which are part of a Kid Rock song called, "'Til You Can't"; the "814 Bible Study" held weekly in the school buildings and classrooms; the "Young Life" Christian club which is permitted to meet in the school buildings and classrooms; annual "See You At The Pole" Christian prayer events; a monthly food drive sponsored by a Catholic religious organization, the Society of St. Vincent de Paul; prayer during football games and other athletic events; youth ministries permitted to offer worship services and/or prayer meetings in the school auditorium; the display of an "Angel Tree"; "Merry Christmas" displayed in the school buildings and classrooms; intentional references to "Christmas

48

Break" and to "Easter Break" rather than to "Winter Break" or to "Spring Break"; every morning the Pledge of Allegiance being recited to the American flag by the students throughout the District; "[a]ny military service branch flag" of the United States being permitted to be displayed; seven (7) specifically delineated exceptions contained in the Policy, and Plaintiffs allege, in practice, several other exceptions to the Policy; the District holding "Sideline Cancer" games or athletic events annually; the District sponsoring "Pink Out" student events to promote awareness of the risk of breast cancer among women; the District promoting a "Go Red For Women" campaign to promote awareness of the risk of heart disease among women including recognizing a "Woman of Impact" as part of the campaign; permitting the Boy Scouts of America and the Eagle Scouts of America to meet in the school buildings and classrooms; observing Black History Month and Martin Luther King, Jr. Day including having coursework associated with both; and sponsoring the "The Thin Blue Line" flags on School Resource Officers' uniforms and/or on the uniforms of other officers, employees, and/or agents of the District. However, a rainbow sticker in support of the LGBTQ+ community is not allowed.

106.    In order to provide further context for Defendants' homophobic actions committed against Ms. Roe, previously, in or about academic year 2023, Defendant, Hollidaysburg Area School District, also required the removal of books from Ms. Roe's classroom. Ms. Roe teaches Composition and also Journalism for Defendant, Hollidaysburg Area School District. Defendant, Hollidaysburg Area School District, required the removal of books from Ms. Roe's classroom simply because the books included LGBTQ+ characters, had LGBTQ+ content, or LGBTQ+ themes. More specifically, former Assistant Superintendent, Dr. Sarah Palazzi, and former Principal, Mr. Kenneth Krott, who were employees of Defendant, Hollidaysburg Area School District, entered Ms. Roe's classroom and physically removed books from the bookshelf of her

49

classroom, specifically the bookshelf which was accessible to and used by students in Ms. Roe's classes. On behalf of the District, Dr. Palazzi and Mr. Krott entered Ms. Roe's classroom and physically removed the following books from Ms. Roe's bookshelf, and did not permit the following books to be present in Ms. Roe's classroom, simply because they contained LGBTQ+ characters, content, or themes: *Will Grayson, Will Grayson; Looking for Alaska; Laura Dean Keeps Breaking Up With Me; A Study in Charlotte; Paper Towns;* and *Brazen: Rebel Ladies Who Rocked the World. Brazen: Rebel Ladies Who Rocked the World* is a non-fiction book referencing historical figures, and, it is believed, and, therefore, averred, that the book was removed from the bookshelf accessible to students in Ms. Roe's classroom by Dr. Palazzi and Mr. Krott simply because the book identified certain of the historical figures in the book as being women who were LGBTQ+. Defendant, Hollidaysburg Area School District, and Defendant, Curtis Whitesel, are believed and averred to continue to be enforcing the ban on the aforementioned books including up to the present.

107. Furthermore, in or about academic year 2023, Defendant, Hollidaysburg Area School District, specifically Dr. Robert J. Gildea, former Superintendent of Defendant, Hollidaysburg Area School District, prohibited Ms. Roe from teaching *They Called Us Enemy*, by George Takei, because of the political climate including with respect to LGBTQ+ individuals. George Takei is an openly gay individual. It is alleged that Defendant, Hollidaysburg Area School District, and Defendant, Curtis Whitesel, are believed and averred to continue to be enforcing the prohibition on teaching *They Called Us Enemy*, by George Takei, being taught by Plaintiff, Ms. Roe, up to and including the present.

108. During a School Board meeting held on or about March 18, 2026, the novel, *Sugar Shack*, was also banned from the District's school libraries by the Board because, as determined

by Board member, Ms. Ying Li, during the Board meeting held on that date, the novel, *Sugar Shack*, had a potentially gay character in it, or words to that effect. In reality, the book contains a single reference to a character identified as male who states, "My husband will be here later," or words to that effect. The mere existence of a gay character in the novel, *Sugar Shack*, was sufficient for Defendant, Hollidaysburg Area School District's, Board to ban the book throughout the entire District.

109. In or about April 2026, during another School Board meeting, Ms. Ying Li, School Board member, further stated an intent to ban the use of the required Advanced Placement ("A.P.") Psychology textbook simply because it mentioned sexual orientation as part of human sexuality. It should be noted that for an A.P. class, the A.P. Board actually sets the appropriate curriculum, including providing a list of textbooks that should be used for the A.P. class. To further demonstrate the extent of the School District's blatant homophobia, Ms. Li, School Board member, further stated on that date that she wanted to reach out to the publisher to see if she could have the textbook revised without that content contained within it, or words to that effect.

110. During a School Board meeting held on or about May 13, 2026, the novel, *Just Like Jackie*, was also banned from the District's school libraries by the Board because of a gay character, or words to that effect, as determined by Board member, Ms. Li, during the Board meeting held on that date.

111. In addition, during the Board meeting held on or about May 13, 2026, the novel, *War Games*, was also banned from the District's school libraries by the Board because it has a gay character, or words to that effect, as determined by Board member, Ms. Li, during the Board meeting held on that date.

51

112.    Defendants' aforementioned banned books, and/or Defendants' additional acts of banning books because they have LGBTQ+ characters, content, and/or themes, from Ms. Roe's classroom, and from, it is believed and averred, the libraries and other classrooms throughout Defendant, Hollidaysburg Area School District, discriminate based on sexual orientation and/or sex in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

113.    At all times relevant hereto, Defendant, Hollidaysburg Area School District, operated a policy, practice, and/or custom of discriminating based on sexual orientation and gender identity, stigmatizing LGBTQ+ individuals, and treating LGBTQ+ people as inherently unequal. It is averred that the passage and implementation of the language, "sexual orientation or gender identity," in Policy 321.1, was on account of a bare desire to harm people who are LGBTQ+.

114.    School District Policy 321.1 is an official policy of the School District that discriminates based on sexual orientation or gender identity and that treats LGBTQ+ people as inherently unequal. School District Policy 321.1 facially discriminates against Plaintiff, Jane Roe, as a member of the LGBTQ+ community. Alternatively, School District Policy 321.1 is discriminatory based on sexual orientation as applied to Plaintiff, Jane Roe.

115.    Plaintiff, Ms. Roe, contends that strict scrutiny and/or a heightened or intermediate level of scrutiny applies to the instant claim. People who are gay or lesbian constitute an insular class of individuals who have historically been discriminated against based on sexual orientation and gender identity. Sex-based classifications also require the application of a heightened or intermediate level of scrutiny. Alternatively, there is no rational basis for Policy 321.1's prohibition relating to sexual orientation or gender identity. Defendants denied Plaintiff, Ms. Roe, equal protection based on sexual orientation and/or sex.

116.    Mr. Whitesel, had final decision-making authority, at all times relevant hereto.

117.    In the alternative, Mr. Dale McCall, had final decision-making authority, at all times relevant hereto.  Mr. McCall is also believed to have been ordered by Mr. Whitesel to carry out the removal of content relating to sexual orientation or gender identity.  It was Mr. McCall who delivered the communication to Plaintiff, Jane Roe, that the items should be removed on most of the aforementioned occasions.

118.    In the alternative, Mr. Caldwell, had final decision-making authority, at all times relevant hereto.  A proper determination by Mr. Caldwell would have resulted in the discriminatory acts alleged being corrected and remedied.

119.    Mr. Whitesel, Mr. McCall, and Mr. Caldwell personally participated in and were personally involved in the aforementioned discriminatory acts alleged herein.

120.    Defendants, Hollidaysburg Area School District, Whitesel, McCall, and Caldwell failed to adequately train employees and/or agents of Hollidaysburg Area School District.  The lack of training was so severe that it amounted to deliberate indifference to Plaintiff, Jane Roe's, rights.  The failure to train constituted deliberate indifference.  There is a causal connection between the failure to train and the alleged constitutional violation.

121.    The instant claim brought by Plaintiff, Ms. Roe, is brought pursuant to 42 U.S.C. § 1983.

122.    Plaintiff, Jane Roe, has suffered emotional distress, pain and suffering, humiliation and embarrassment, and loss of enjoyment of life and life's pleasures, on account of Defendants' discrimination, and for which Plaintiff, Ms. Roe, seeks damages.  Plaintiff, Jane Roe, requests damages including any economic damages, any damages for past and future medical expenses related to psychological, psychiatric, or other care incurred by Ms. Roe due to the aforementioned

discriminatory acts, compensatory damages for pain and suffering, humiliation and embarrassment, emotional distress, punitive damages, and attorneys' fees and costs, to the extent allowed by applicable law, against Defendant, Hollidaysburg Area School District, and against Defendants Whitesel, McCall, and Caldwell, in their individual capacities.

123. Plaintiff, Jane Roe, seeks equitable/injunctive relief against Defendant, Hollidaysburg Area School District, and Defendants Whitesel, McCall, and Caldwell in their official capacities, requiring that the specific prohibition relating to the language, "sexual orientation or gender identity," contained in the aforementioned School District Policy, Policy 321.1, and any future iteration of the policy, be immediately and permanently enjoined, declaratory judgment and/or the issuance of a Court Order finding that the policy is discriminatory based on sexual orientation and gender identity; a requirement that Defendant, Hollidaysburg Area School District, post notice of the verdict or Court Order in this matter, and any further relief that this Court determines to be just, proper, and equitable.

**WHEREFORE**, Plaintiff, Jane Roe, hereby requests judgment in her favor and against Defendants, Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, individually, and/or jointly and severally, in an amount in excess of $150,000.00, including against Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their individual capacities, individually and/or jointly and severally, for economic damages, out-of-pocket expenses, and actual damages; and against Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their individual capacities, individually and/or jointly and severally, for any and all damages for past and future medical expenses related to psychological, psychiatric, or other care incurred by Ms. Roe due to Defendants' discriminatory acts; compensatory damages for pain and suffering, embarrassment

and humiliation, loss of enjoyment of life and life's pleasures, emotional distress, and punitive damages against Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their individual capacities; and as against Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their individual and/or official capacities, for attorneys' fees, costs of suit, expert fees, and against Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their official capacities, for equitable and injunctive relief including equitable/injunctive relief requiring that the specific prohibition relating to the language, "sexual orientation or gender identity," contained in the aforementioned School District Policy, Policy 321.1, and any future iteration of the policy, be immediately and permanently enjoined, declaratory judgment and/or the issuance of a Court Order finding that the policy is discriminatory based on sexual orientation and gender identity; equitable/injunctive relief that all members of the School Board or the School Board of Directors of Defendant, Hollidaysburg Area School District, as well as all employees of Defendant, Hollidaysburg Area School District, be required to undergo LGBTQ+ sensitivity training; a requirement that Defendant, Hollidaysburg Area School District, post notice of the verdict or Court Order in this matter, and any further relief that this Court determines to be just, proper, and equitable.

**COUNT V:**
**42 U.S.C. § 1983 – VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**
**(PLAINTIFF, JANE DOE v. DEFENDANT, HOLLIDAYSBURG AREA SCHOOL DISTRICT; CURTIS WHITESEL, IN HIS INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY AS SUPERINTENDENT OF HOLLIDAYSBURG AREA SCHOOL DISTRICT; DALE McCALL, IN HIS INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY AS PRINCIPAL OF HOLLIDAYSBURG AREA JUNIOR HIGH SCHOOL; AND BENJAMIN CALDWELL, IN HIS INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY AS TITLE IX COORDINATOR OF DEFENDANT, HOLLIDAYSBURG AREA SCHOOL DISTRICT)**

124.    Plaintiff, Jane Doe, hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

125.    School District Policy 321.1 constitutes a "regulation, custom, or usage" pursuant to 42 U.S.C. § 1983.  Alternatively, it is believed, and, therefore, averred that, at all times relevant hereto, Defendants, Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell were state actors in that they acted under color of state law in "subject[ing]" Plaintiff, Jane Doe, "to deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States" pursuant to 42 U.S.C. § 1983.

126.    The First Amendment to the United States Constitution prohibits Defendants from abridging Plaintiff, Jane Doe's, right to freedom of speech.  Defendants abridged Plaintiffs' right to freedom of speech under the First Amendment to the United States Constitution.  *See* U.S. Const., Amendment I.  Defendants further abridged Plaintiff, Jane Doe's, right to free expression in violation of the First Amendment to the United States Constitution.  *Id.*

127.    It is averred that Policy 321.1 "… relating to sexual orientation or gender identity," is not by its text content-neutral.  Policy 321.1 is by its text content-based.  The Policy makes clear that it applies to content "… relating to sexual orientation or gender identity."

128.    Defendants, at all times relevant hereto, required Ms. Doe to remove Pride flags, rainbow-colored signs, stickers, and/or decals, messages of acceptance for members of the LGBTQ+ community, and any item remotely resembling support for members of the LGBTQ+ community, from her classroom, all as part of Defendants' efforts to purge the schools throughout the District of any and all references to sexual orientation or gender identity.

129.    Defendants engaged in viewpoint-based discrimination by adopting and implementing Policy 321.1 "… relating to sexual orientation or gender identity," policing Plaintiff,

Jane Doe's, protected free speech, and purging the schools of references to sexual orientation, gender identity, rainbows, and any and all messages of support for members of the LGBTQ+ community, but not policing or purging similar speech in a similar manner. The intent behind the Policy is alleged to be an intent to police and to censor speech about sexual orientation or gender identity in the District, but not, by comparison, other similar speech in a similar manner. Defendants cannot censor all mention of sexual orientation of gender identity in the school buildings and at school activities without engaging in viewpoint-based discrimination.

130.    Although the Policy with the new prohibition containing the language, " … sexual orientation or gender identity," was passed formally by the School Board on October 15, 2025, the Policy was previously discussed in September 2025 during School Board meetings by the District's School Board members that the Policy was going to be put up for a vote. The Policy began to be enforced against Plaintiff, Jane Doe, even before its formal adoption on October 15, 2025, in September 2025, by the Defendants, Hollidaysburg Area School District, and specifically Mr. Whitesel and Mr. McCall. Plaintiff, Ms. Doe, alleges that this is further evidence of the true intent behind the Policy, to police speech about sexual orientation or gender identity, and not other similar speech in a similar manner, even before the language of the policy applicable to "sexual orientation or gender identity" was even officially adopted.

131.    Plaintiff, Ms. Doe, contends that the Policy's language regarding religious or political symbols is a ruse or a pretext to police and to purge speech based on sexual orientation and gender identity from the schools throughout the District. Plaintiff alleges that, in practice, the Superintendent, the Principals, and other employees of the District, are alleged to use Policy 321.1 to police and purge the schools throughout the District for any references relating to sexual

orientation or gender identity, but not similarly with respect to religious symbols, political symbols, or other speech about sociopolitical issues.

132.    Defendants are alleged to selectively or disparately enforce the Policy against members of the LGBTQ+ community as they do not similarly enforce the Policy to require the removal of other religious, political, or sociopolitical items that violate the Policy.  Plaintiff, Ms. Doe, identifies disparate or discriminatory treatment because, at the same time that the District polices the presence of any and all rainbows, any items relating to sexual orientation or gender identity, or any items remotely resembling support for members of the LGBTQ+ community in the District, the District permitted, and, it is believed and averred, continues to permit religious, political, and sociopolitical symbols, décor, displays, and activities in teachers' classrooms or conspicuous areas of the school that similarly violate the text of the policy, including but not limited to:  a sign in a teacher's classroom which states, "As long as teachers give tests, there will be prayer in schools"; another sign in another classroom referencing Jesus; a sign in the Assistant Principal's office referring to Jesus as "the Lord," or words to that effect; a worksheet given to students with the Bible verse, Philippians 4:13; it is believed and averred, other religious items that are routinely permitted in the classrooms; the complete lyrics to the contemporary Christian worship song, "Come to Jesus," taped up in the weight room near the gym exhorting students to, among other things, "Come to Jesus," "Sing to Jesus," "Dance for Jesus," "Fall on Jesus," "Cry to Jesus," and "Fly to Jesus"; religious jewelry including cross necklaces and a Jewish Star of David which teachers are permitted to wear in the classroom; religious clothing which teachers are permitted to wear in the classroom including a shirt containing Christian lyrics which are part of a Kid Rock song called, "'Til You Can't"; the "814 Bible Study" held weekly in the school buildings and classrooms; the "Young Life" Christian club which is permitted to meet in the school buildings

58

and classrooms; annual "See You At The Pole" Christian prayer events; a monthly food drive sponsored by a Catholic religious organization, the Society of St. Vincent de Paul; prayer during football games and other athletic events; youth ministries permitted to offer worship services and/or prayer meetings in the school auditorium; the display of an "Angel Tree"; "Merry Christmas" displayed in the school buildings and classrooms; intentional references to "Christmas Break" and to "Easter Break" rather than to "Winter Break" or to "Spring Break"; every morning the Pledge of Allegiance being recited to the American flag by the students throughout the District; "[a]ny military service branch flag" of the United States being permitted to be displayed; seven (7) specifically delineated exceptions contained in the Policy, and Plaintiffs allege, in practice, several other exceptions to the Policy; the District holding "Sideline Cancer" games or athletic events annually; the District sponsoring "Pink Out" student events to promote awareness of the risk of breast cancer among women; the District promoting a "Go Red For Women" campaign to increase awareness of the risk of heart disease among women including recognizing a "Woman of Impact" as part of the campaign; permitting the Boy Scouts of America and the Eagle Scouts of America to meet in the school buildings and classrooms; observing Black History Month and Martin Luther King, Jr. Day including having coursework associated with both; and sponsoring the "The Thin Blue Line" flags on School Resource Officers' uniforms and/or on the uniforms of other officers, employees, and/or agents of the District. However, a rainbow sticker in support of the LGBTQ+ community is not allowed.

133.    On or about October 31, 2025, Defendant, Hollidaysburg Area School District, held an official in-service training with Plaintiffs and with other teachers and administrators of the School District in attendance. The training was held at Hollidaysburg Area Senior High School and conducted by Superintendent Whitesel. At the in-service training, Superintendent Whitesel

read the entire room the text of Policy 321.1. Plaintiffs were specifically instructed by Superintendent Whitesel during the training that, pursuant to Policy 321.1, the classrooms could not contain messages that had any reference to sexual orientation or gender identity, or words to that effect. Ms. Doe asked Superintendent Whitesel a question in front of the group about why she would have to remove such items from her classroom as a violation of the Policy, or words to that effect. Superintendent Whitesel responded to Ms. Doe in front of the group that it was "because rainbows have religious connotations," or words to that effect. It should also be pointed out that a rainbow, according to Superintendent Whitesel, allegedly has "religious connotations," but, for some reason, according to Defendants, an actual Scripture passage does not.

134.    Defendants passed and implemented Policy 321.1's language "… relating to sexual orientation or gender identity," and policed and purged speech relating to sexual orientation or gender identity, including Plaintiff, Jane Doe's, speech, and not other similar speech in a similar manner, in order to "excis[e] certain ideas or viewpoints from the public dialogue" in violation of the First Amendment to the United States Constitution. *See Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 633, 642 (1994).

135.    Defendants' actions also violate *Minnesota Voters Alliance v. Mansky*, 585 U.S. 1 (2018). Similar to *Mansky*, Defendant, Hollidaysburg Area School District's, Policy 321.1 lacks a sensible basis for distinguishing "what [content] may come in versus what must stay out." *Minnesota Voters Alliance v. Mansky*, 585 U.S. 1, 16 (2018) (internal citation omitted). The "indeterminate" nature and scope of the prohibition contained at Policy 321.1 presents "[t]he opportunity for abuse, especially where [it] has received a virtually open-ended interpretation." *Id.* at 21 (internal citations omitted). Further, Defendant, Hollidaysburg Area School District, the School Board, and Defendants Whitesel, McCall, and Caldwell's own politics may shape their

views on what is considered a violation of Policy 321.1, which further renders Policy 321.1 unconstitutional.

136.    In the alternative, Plaintiff, Jane Doe's, rainbow flags, rainbow-colored signs, stickers, and/or decals in support of the LGBTQ+ community constitute expressive conduct.

137.    In the alternative, Policy 321.1 sweeps far too much protected speech within the scope of its prohibition of speech relating to religious, political, sociopolitical, and speech relating to sexual orientation or gender identity.

**WHEREFORE**, Plaintiff, Jane Doe, hereby requests judgment in her favor and against Defendants, Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, individually, and/or jointly and severally, in an amount in excess of $150,000.00, including against Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their individual capacities, individually and/or jointly and severally, for economic damages, out-of-pocket expenses, and actual damages; and against Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their individual capacities, individually and/or jointly and severally, for compensatory damages for pain and suffering, embarrassment and humiliation, loss of enjoyment of life and life's pleasures, emotional distress, and punitive damages; and as against Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their individual capacities, for attorneys' fees, costs of suit, expert fees, and against Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their official capacities, for equitable and injunctive relief requiring that the specific prohibition relating to the language, "sexual orientation or gender identity," contained in the aforementioned School District Policy, Policy 321.1, and any future iteration of the policy, be immediately and permanently enjoined, declaratory judgment and/or the

61

issuance of a Court Order finding that the policy violates the Free Speech Clause; a requirement that Defendant, Hollidaysburg Area School District, post notice of the verdict or Court Order in this matter, and any further relief that this Court determines to be just, proper, and equitable.

**COUNT VI:**
**42 U.S.C. § 1983 – VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION (PLAINTIFF, JANE ROE v. DEFENDANT, HOLLIDAYSBURG AREA SCHOOL DISTRICT; CURTIS WHITESEL, IN HIS INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY AS SUPERINTENDENT OF HOLLIDAYSBURG AREA SCHOOL DISTRICT; DALE McCALL, IN HIS INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY AS PRINCIPAL OF HOLLIDAYSBURG AREA JUNIOR HIGH SCHOOL; AND BENJAMIN CALDWELL, IN HIS INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY AS TITLE IX COORDINATOR OF DEFENDANT, HOLLIDAYSBURG <u>AREA SCHOOL DISTRICT)</u>**

138. Plaintiff, Jane Roe, hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

139. School District Policy 321.1 constitutes a "regulation, custom, or usage" pursuant to 42 U.S.C. § 1983. Alternatively, it is believed, and therefore, averred that, at all times relevant hereto, Defendants, Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell were state actors in that they acted under color of state law in "subject[ing]" Plaintiff, Jane Roe, "to deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States" pursuant to 42 U.S.C. § 1983.

140. The First Amendment to the United States Constitution prohibits Defendants from abridging Plaintiff, Jane Roe's, right to freedom of speech. Defendants abridged Plaintiff, Jane Roe's, right to freedom of speech under the First Amendment to the United States Constitution. *See* U.S. Const., Amendment I. Defendants further abridged Plaintiff, Jane Roe's, right to free expression in violation of the First Amendment to the United States Constitution. *Id.*

141.    Defendants engaged in content-based and/or viewpoint-based discrimination by adopting and implementing Policy 321.1 "… relating to sexual orientation or gender identity," policing Plaintiff, Jane Roe's, protected free speech, and purging the schools of references to sexual orientation, gender identity, rainbows, and any and all messages of support for members of the LGBTQ+ community, but not policing or purging similar speech in a similar manner.  The intent behind the Policy is alleged to be an intent to police and to censor speech about sexual orientation or gender identity in the District, but not, by comparison, other similar speech in a similar manner.

142.    Although the Policy containing the new prohibition containing the language, " … sexual orientation or gender identity," was passed formally by the School Board on October 15, 2025, the Policy was previously discussed in September 2025 during School Board meetings by the District's School Board members that the Policy was going to be put up for a vote.  The Policy began to be enforced against Plaintiff, Jane Roe, by Defendants, Hollidaysburg Area School District, Whitesel, and McCall, even before its formal adoption on October 15, 2025, in September 2025.  Plaintiff, Ms. Roe, alleges that this is further evidence of the true intent behind the Policy, to police speech about sexual orientation or gender identity, and not other similar speech in a similar manner, even before the language of the policy applicable to "sexual orientation or gender identity" was even officially adopted.

143.    Pursuant to the District's Policy, Policy 321.1, formally adopted on October 15, 2025, and beginning even before in September 2025, in an effort to purge the classrooms and school buildings throughout the District of content "... relating to sexual orientation or gender identity" in violation of Policy 321.1, Defendants required Plaintiff, Ms. Roe, to remove the Pride flag, the Bi Pride flag, rainbow-colored signs, stickers, and/or decals, messages of support for the

LGBTQ+ community, and any item remotely resembling support for members of the LGBTQ+ community from her classroom.

144.   On or about October 31, 2025, Defendant, Hollidaysburg Area School District, held an official in-service training with Plaintiffs and with other teachers and administrators of the School District in attendance.  The training was held at Hollidaysburg Area Senior High School and conducted by Superintendent Whitesel.  At the in-service training, Superintendent Whitesel read the entire room the text of Policy 321.1.  Plaintiffs were specifically instructed by Superintendent Whitesel during the training that, pursuant to Policy 321.1, the classrooms could not contain messages that had any reference to sexual orientation or gender identity, or words to that effect.  Ms. Doe asked Superintendent Whitesel a question in front of the group about why she would have to remove such items from her classroom as a violation of the Policy, or words to that effect.  Superintendent Whitesel responded to Ms. Doe in front of the group that it was "because rainbows have religious connotations," or words to that effect.  It should also be pointed out that a rainbow, according to Superintendent Whitesel, allegedly has "religious connotations," but, for some reason, according to Defendants, an actual Scripture passage does not.

145.   Plaintiff, Ms. Roe, contends that the Policy's language regarding religious or political symbols is a ruse or a pretext to police and to purge speech based on sexual orientation and gender identity from the schools throughout the District.  Plaintiff, Ms. Roe, alleges that, in practice, the Superintendent, the Principals, and other employees of the District, are alleged to use Policy 321.1 to police and purge the schools throughout the District for any references relating to sexual orientation or gender identity, but not similarly with respect to religious symbols, political symbols, or other speech about sociopolitical issues.

146.    Defendants are alleged to selectively or disparately enforce the Policy against members of the LGBTQ+ community as they do not similarly enforce the Policy to require the removal of other religious, political, or sociopolitical items that violate the Policy.  Plaintiff, Ms. Roe, identifies disparate or discriminatory treatment because, at the same time that the District polices the presence of any and all rainbows, any items relating to sexual orientation or gender identity, or any items remotely resembling support for members of the LGBTQ+ community in the District, the District permitted, and, it is believed and averred, continues to permit religious, political, and sociopolitical symbols, décor, displays, and activities in teachers' classrooms or conspicuous areas of the school that similarly violate the text of the policy, including but not limited to:  a sign in a teacher's classroom which states, "As long as teachers give tests, there will be prayer in schools"; another sign in another classroom referencing Jesus; a sign in the Assistant Principal's office referring to Jesus as "the Lord," or words to that effect; a worksheet given to students with the Bible verse, Philippians 4:13; it is believed and averred, other religious items that are routinely permitted in the classrooms; the complete lyrics to the contemporary Christian worship song, "Come to Jesus," taped up in the weight room near the gym exhorting students to, among other things, "Come to Jesus," "Sing to Jesus," "Dance for Jesus," "Fall on Jesus," "Cry to Jesus," and "Fly to Jesus"; religious jewelry including cross necklaces and a Jewish Star of David which teachers are permitted to wear in the classroom; religious clothing which teachers are permitted to wear in the classroom including a shirt containing Christian lyrics which are part of a Kid Rock song called, "'Til You Can't"; the "814 Bible Study" held weekly in the school buildings and classrooms; the "Young Life" Christian club which is permitted to meet in the school buildings and classrooms; annual "See You At The Pole" Christian prayer events; a monthly food drive sponsored by a Catholic religious organization, the Society of St. Vincent de Paul; prayer during

65

football games and other athletic events; youth ministries permitted to offer worship services and/or prayer meetings in the school auditorium; the display of an "Angel Tree"; "Merry Christmas" displayed in the school buildings and classrooms; intentional references to "Christmas Break" and to "Easter Break" rather than to "Winter Break" or to "Spring Break"; every morning the Pledge of Allegiance being recited to the American flag by the students throughout the District; "[a]ny military service branch flag" of the United States being permitted to be displayed; seven (7) specifically delineated exceptions contained in the Policy, and Plaintiffs allege, in practice, several other exceptions to the Policy; the District holding "Sideline Cancer" games or athletic events annually; the District sponsoring "Pink Out" student events to promote awareness of the risk of breast cancer among women; the District promoting a "Go Red For Women" campaign to increase awareness of the risk of heart disease among women including recognizing a "Woman of Impact" as part of the campaign; permitting the Boy Scouts of America and the Eagle Scouts of America to meet in the school buildings and classrooms; observing Black History Month and Martin Luther King, Jr. Day including having coursework associated with both; and sponsoring the "The Thin Blue Line" flags on School Resource Officers' uniforms and/or on the uniforms of other officers, employees, and/or agents of the District. However, a rainbow sticker in support of the LGBTQ+ community is not allowed.

147.    Defendants passed and implemented Policy 321.1's language "… relating to sexual orientation or gender identity," and policed and purged speech relating to sexual orientation or gender identity, including Plaintiff, Jane Roe's, speech, and not other similar speech in a similar manner, in order to "excis[e] certain ideas or viewpoints from the public dialogue" in violation of the First Amendment to the United States Constitution. *See Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 633, 642 (1994).

148.    It is averred that Policy 321.1 is not by its text content-neutral, but rather, Policy 321.1 is content-based.

149.    It is well-settled that, "If there is any fixed star in our constitutional constellation," *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624, 642 (1943), it is the principle that the government may not interfere with "an uninhibited marketplace of ideas." *McCullen v. Coakley*, 573 U.S. 464, 476 (2014).  It is further well-settled that there are limitations placed on a public school in compelling a person to speak its own preferred message.  *See Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 505 (1969).

150.    In order to provide further context for Defendants' homophobic actions committed against Ms. Roe, previously, in or about academic year 2023, Defendant, Hollidaysburg Area School District, also required the removal of books from Ms. Roe's classroom.  Ms. Roe teaches Composition and also Journalism for Defendant, Hollidaysburg Area School District.  Defendant, Hollidaysburg Area School District, required the removal of books from Ms. Roe's classroom simply because the books included LGBTQ+ characters, had LGBTQ+ content, or LGBTQ+ themes.  More specifically, former Assistant Superintendent, Dr. Sarah Palazzi, and former Principal, Mr. Kenneth Krott, who were employees of Defendant, Hollidaysburg Area School District, entered Ms. Roe's classroom and physically removed books from the bookshelf of her classroom, specifically the bookshelf which was accessible to and used by students in Ms. Roe's classes.  On behalf of the District, Dr. Palazzi and Mr. Krott entered Ms. Roe's classroom and physically removed the following books from Ms. Roe's bookshelf, and did not permit the following books to be present in Ms. Roe's classroom, simply because they contained LGBTQ+ characters, content, or themes:  *Will Grayson, Will Grayson; Looking for Alaska; Laura Dean Keeps Breaking Up With Me; A Study in Charlotte; Paper Towns;* and *Brazen: Rebel Ladies Who*

67

*Rocked the World. Brazen: Rebel Ladies Who Rocked the World* is a non-fiction book referencing historical figures, and, it is believed, and, therefore, averred, that the book was removed from the bookshelf accessible to students in Ms. Roe's classroom by Dr. Palazzi and Mr. Krott simply because the book identified certain of the historical figures in the book as being women who were LGBTQ+. Defendant, Hollidaysburg Area School District, and Defendant, Curtis Whitesel, are believed and averred to continue to be enforcing the ban on the aforementioned books including up to the present.

151. Furthermore, in or about academic year 2023, Defendant, Hollidaysburg Area School District, specifically Dr. Robert J. Gildea, former Superintendent of Defendant, Hollidaysburg Area School District, prohibited Ms. Roe from teaching *They Called Us Enemy*, by George Takei, because of the political climate including with respect to LGBTQ+ individuals. George Takei is an openly gay individual. It is alleged that Defendant, Hollidaysburg Area School District, and Defendant, Curtis Whitesel, are believed and averred to continue to be enforcing the prohibition on teaching *They Called Us Enemy*, by George Takei, being taught by Plaintiff, Ms. Roe, up to and including the present.

152. During a School Board meeting held on or about March 18, 2026, the novel, *Sugar Shack*, was also banned from the District's school libraries by the Board because, as determined by Board member, Ms. Ying Li, during the Board meeting held on that date, the novel, *Sugar Shack*, had a potentially gay character in it, or words to that effect. In reality, the book contains a single reference to a character identified as male who states, "My husband will be here later," or words to that effect. The mere existence of a gay character in the novel, *Sugar Shack*, was sufficient for Defendant, Hollidaysburg Area School District's, Board to ban the book throughout the entire District.

153.    In or about April 2026, during another School Board meeting, Ms. Ying Li, School Board member, further stated an intent to ban the use of the required Advanced Placement ("A.P.") Psychology textbook simply because it mentioned sexual orientation as part of human sexuality. It should be noted that for an A.P. class, the A.P. Board actually sets the appropriate curriculum, including providing a list of textbooks that should be used for the A.P. class.    To further demonstrate the extent of the School District's blatant homophobia, Ms. Li, School Board member, further stated on that date that she wanted to reach out to the publisher to see if she could have the textbook revised without that content contained within it, or words to that effect.

154.    During a School Board meeting held on or about May 13, 2026, the novel, *Just Like Jackie*, was also banned from the District's school libraries by the Board because of a gay character, or words to that effect, as determined by Board member, Ms. Li, during the Board meeting held on that date.

155.    In addition, during the Board meeting held on or about May 13, 2026, the novel, *War Games*, was also banned from the District's school libraries by the Board because it has a gay character, or words to that effect, as determined by Board member, Ms. Li, during the Board meeting held on that date.

156.    Defendants' aforementioned banned books, and/or Defendants' additional acts of banning books because they have LGBTQ+ characters, content, and/or themes, from Ms. Roe's classroom, and from, it is believed and averred, the libraries and other classrooms throughout Defendant, Hollidaysburg Area School District, and of prohibiting certain books from being taught in the District on the basis of the same, are content-based and viewpoint-based restrictions that violate the First Amendment. *See Island Trees Sch. Dist. v. Pico by Pico*, 457 U.S. 853 (1982) (placing limits on the ability of a School Board to censor books and finding that censorship of

69

books because they offended "social, political, and moral" tastes or because the Board disliked the ideas in them violated the First Amendment).

157.    In the alternative, Plaintiff, Jane Roe's, Pride Flag, Bi Pride Flag, and rainbow-colored signs, stickers, and/or decals in support of the LGBTQ+ community constitute expressive conduct.

158.    In the alternative, Policy 321.1 sweeps far too much protected speech within the scope of its prohibition of speech relating to religious, political, sociopolitical, and speech relating to sexual orientation or gender identity.

**WHEREFORE**, Plaintiff, Jane Roe, hereby requests judgment in her favor and against Defendants, Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, individually, and/or jointly and severally, in an amount in excess of $150,000.00, including against Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their individual capacities, individually and/or jointly and severally, for economic damages, out-of-pocket expenses, and actual damages; and against Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their individual capacities, individually and/or jointly and severally, for any and all damages for past and future medical expenses related to psychological, psychiatric, or other care incurred by Ms. Roe due to Defendants' discriminatory acts; as against Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their individual capacities, individually and/or jointly and severally, for compensatory damages for pain and suffering, embarrassment and humiliation, loss of enjoyment of life and life's pleasures, emotional distress, and punitive damages; and as against Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their individual capacities, for attorneys' fees, costs of suit, expert fees, and against

Hollidaysburg Area School District, Curtis Whitesel, Dale McCall, and Benjamin Caldwell, in their official capacities, for equitable and injunctive relief including equitable/injunctive relief requiring that the specific prohibition relating to the language, "sexual orientation or gender identity," contained in the aforementioned School District Policy, Policy 321.1, and any future iteration of the policy, be immediately and permanently enjoined, declaratory judgment and/or the issuance of a Court Order finding that the policy violates the Free Speech Clause; a requirement that Defendant, Hollidaysburg Area School District, post notice of the verdict or Court Order in this matter, and any further relief that this Court determines to be just, proper, and equitable.

## V.    CLASS-WIDE ALLEGATIONS, OR CLASS ACTION STATEMENT, PURSUANT TO LCvR 23(A)(2):

159.    Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth at length herein.

160.    The aforementioned Policy 321.1 applies throughout Defendant, Hollidaysburg Area School District, to Plaintiff, Jane Doe, Plaintiff, Jane Roe, and also to other teachers within the School District, prohibiting them from displaying content relating to sexual orientation and gender identity, including the Pride flag, the Bi Pride flag, rainbow-colored signs, stickers, and/or decals, other messages of acceptance for members of the LGBTQ+ community, and any item remotely resembling support for members of the LGBTQ+ community.

161.    The claims of Plaintiff, Jane Doe, Plaintiff, Jane Roe, and of other teachers within the School District affected by Policy 321.1, who are prohibited from displaying content relating to sexual orientation or gender identity, even a rainbow, are so numerous that joinder will be impracticable. A class action would be appropriate to address Plaintiff, Jane Doe, Plaintiff Jane Roe, and other teachers' claims for violations of their civil rights and of their Free Speech rights in the instant action. The ability of a teacher to display a Pride flag in their classroom in the future

affects the rights of more than just Plaintiff, Jane Doe, or Plaintiff, Jane Roe, but also the rights of other teachers as well as students throughout Defendant, Hollidaysburg Area School District.

162.    Defendants' widespread policy, Policy 321.1, harms members of the LGBTQ+ community within Defendant, Hollidaysburg Area School District, including LGBTQ+ teachers. Defendants should face liability on these claims on a class-wide basis.

163.    Additionally, since the impetus for the aforementioned bigoted and homophobic actions alleged herein were committed by School Board members of Defendant, Hollidaysburg Area School District's, School Board, or School Board of Directors, and enforced District-wide by Defendant, Superintendent Curtis Whitesel, rather than just being a decision made by a staff member of an individual school within the District, this is an additional reason that joinder would be impracticable, and a putative class of all teachers affected by the Policy would be appropriate at this time.

164.    It should be further noted that Policy 321.1 has far-reaching and widespread effect on students as well as teachers within Defendant, Hollidaysburg Area School District, as Policy 321.1 is alleged to endanger the safety and wellbeing of LGBTQ+ students within Defendant, Hollidaysburg Area School District, by discriminating against them and stigmatizing them solely on account of their LGBTQ+ status. *See* 2023 Youth Risk Behavior Survey, CDC; *see also* 2024 U.S. National Survey on the Mental Health of LGBTQ+ Young People, The Trevor Project.

165.    The homophobic actions of Defendant, Hollidaysburg Area School District, stigmatize and discriminate against LGBTQ+ students in addition to discriminating against LGBTQ+ teachers by treating them as inherently less than and as inherently unequal to individuals who are not LGBTQ+. Students attending schools within Defendant, Hollidaysburg Area School

72

District, also have the right to receive information on an equal and non-discriminatory basis untainted by bigotry within the School District.

166. The rights of students within the District including LGBTQ+ students within the District will therefore also be affected by a decision in this matter making certification of a putative class of members of the LGBTQ+ community within Defendant, Hollidaysburg Area School District, appropriate at this time.

167. Common questions of law and of fact are presented in the instant action such as whether Policy 321.1 is discriminatory based on sexual orientation and/or sex, and whether Policy 321.1 violates the Free Speech rights of teachers within the District, including but not limited to Plaintiff, Jane Doe, Plaintiff, Jane Roe, and other teachers within Defendant, Hollidaysburg Area School District, therefore, certification of a putative class consisting of LGBTQ+ teachers within Defendant, Hollidaysburg Area School District, is appropriate at this time.

168. The claims of Plaintiff, Jane Doe, and Plaintiff, Jane Roe, are typical of the claims that would be raised by other teachers regarding Policy 321.1 including but not limited to whether Policy 321.1 discriminates based on sexual orientation and/or sex, and whether Policy 321.1 violates the Free Speech rights of teachers within the District including but not limited to Plaintiff, Jane Doe, and Plaintiff, Jane Roe.

169. The same equitable/injunctive relief sought by Plaintiff, Jane Doe, and Plaintiff, Jane Roe, in the instant action would likewise apply to the putative class.

170. Plaintiff, Jane Doe, and Plaintiff, Jane Roe, can adequately represent the putative class because Plaintiff, Jane Doe, and Plaintiff, Jane Roe, are longtime, faithful employees of Defendant, Hollidaysburg Area School District. Further, Plaintiff, Jane Doe, and Plaintiff, Jane Roe, identify as LGBTQ+ and were directly impacted by discriminatory Policy 321.1 by being

required to remove all manner of content relating to sexual orientation or gender identity from their classrooms allegedly in violation of the Policy. Plaintiff, Jane Doe, and Plaintiff, Jane Roe, remain employed by Defendant, Hollidaysburg Area School District, and, therefore, remain directly affected by discriminatory Policy 321.1. Undersigned Counsel can also adequately represent Plaintiff, Jane Doe, Plaintiff, Jane Roe, and other teachers within Defendant, Hollisdaysburg Area School District, who are adversely affected by discriminatory Policy 321.1.

171.   The proposed size of the applicable class would be approximately, it is believed and, therefore averred, more than one thousand (1,000) individuals, consisting of teachers, employees, and/or agents employed throughout Defendant, Hollidaysburg Area School District, negatively affected by Policy 321.1. The proposed size of the class would be even larger if the putative class were to include students in attendance at Defendant, Hollidaysburg Area School District, negatively affected by Policy 321.1.

172.   Defendants' admitted action of "abolishing" Title IX training throughout the School District is a decision that also has far-reaching and widespread consequences throughout Defendant, Hollidaysburg Area School District, for teachers and students who are affected by that decision. Defendants would rather admit to "abolishing" Title IX training on sex discrimination entirely rather than have to teach that individuals are protected from discrimination based on their sexual orientation or their gender identity as discrimination on the basis of sex pursuant to Title IX. The aforementioned reason is an additional reason that joinder would be impracticable and, therefore, that certification of the instant matter as a putative class action would be appropriate at this time.

## VI.   JURY DEMAND:

Plaintiffs hereby demand a jury of eight (8) members on all counts so triable.

Respectfully submitted,

DATED: 06/16/2026          BY: _____

Justin Robinette, Esquire
PA 319829
1650 Market Street, Ste. 3600
PMB # 2494
Philadelphia, PA 19103
Tel: (267) 595-6254
Fax: (267) 592-3067
Justin@JRobinetteLaw.com

*Attorney for Plaintiffs,*
*Jane Doe and Jane Roe*

75

## VERIFICATION

I hereby declare under penalty of perjury that I am the Plaintiff, Jane Doe, in the within action and that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.

06/15/2026

Executed on: _____        By: _____

(Jun 15, 2026 09:04:50 EDT)

Ms. ██████████

76

## VERIFICATION

I hereby declare under penalty of perjury that I am the Plaintiff, Jane Roe, in the within action and that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.

Executed on: 06/15/2026          By:

(Jun 15, 2026 09:25:57 EDT)

Ms. ████████

77

## CERTIFICATE OF SERVICE

I, JUSTIN F. ROBINETTE, ESQUIRE, hereby certify that on this 16th day of JUNE, 2026, the foregoing Complaint was filed with the Court and served together with the Court-issued Summons, via personal service/hand delivery, on the foregoing Defendants, on the date set forth below, or as soon thereafter as service can be effectuated.

Respectfully submitted,

DATED: 06/16/2026         BY:

Justin Robinette, Esquire
PA 319829
1650 Market Street, Ste. 3600
PMB # 2494
Philadelphia, PA 19103
Tel: (267) 595-6254
Fax: (267) 592-3067
Justin@JRobinetteLaw.com

*Attorney for Plaintiffs,*
*Jane Doe and Jane Roe*

78